SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Ave.
Reno, Nevada 89509
Tel: (775) 284-7000
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
Co-Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MONICA BRANCH-NOTO, individually and on behalf of JOHN DOE MINOR *NO. 1*, as guardian of said minor, TIFFANY PAULSON, individually and on behalf of JOHN DOE MINOR *NO. 2* and JANE DOE MINOR *NO. 1*, as guardian of said minors,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as the Attorney General of the State of Nevada, CLARK COUNTY SCHOOL DISTRICT, a public entity, DOES 1 through 100.<br><br>Defendants | **Case No. 2:21-cv-01507 JAD-DJA**<br><br>**PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

COME NOW, PLAINTIFFS, MONICA BRANCH-NOTO *Et Al*, by and through the undersigned attorney of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and JOEY S. GILBERT, ESQ of JOEY GILBERT LAW and pursuant to Fed. R. Civ. Pro. 65 and LR 7-4 [*See Counsel Declaration attached hereto as Exhibit "1"*], hereby move this Court for a preliminary injunction against Defendants, to enjoin them from wanton and arbitrary mask mandate being forced on all students in Clark County regardless of health or vaccination status in violation of a Notice and Hearing requirement as required under the Due Process Clause of the Fourteenth Amendment, *see infra*.

The purpose of this Motion is made on an emergency basis, given the fact that it has been over four weeks since the 2021-2022 school year has started and the Governor's mandate continues citing to the Governor's Emergency Orders on March 12, 2020, over eighteen months ago. Defendants have bypassed Plaintiffs' due process rights with said Mandate and Plaintiffs are entitled to relief thereon.

At this juncture, there is no longer an Emergency, but an obvious abuse of arbitrary and capricious power to control Nevada's students and families and continue to wreak havoc on their mental and physical health.  Plaintiffs' Motion is based upon the pleadings and papers on file herein, the Exhibits attached and Declarations filed concurrently herewith, and the following points and authorities.

**INTRODUCTION**

The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Troxel v Granville 530 U.S. 57 (2000) citing to Washington v. Glucksberg, 521 U.S. 702, 720*, including parents' fundamental right to

make decisions concerning the care, custody, and control of their children, see, *e.g.*, *Stanley* v. *Illinois*, *405 U.S. 645, 651. Pp. 5-8.*

When a child is not competent enough to decide what's in their best interest, the parent or legal guardian steps in. Defendants' mask mandate under the notion of *parens patrie* is unsubstantiated by scientific evidence as demonstrated *infra*. Furthermore, Defendants insert themselves to make medical decisions on behalf of minors across Clark County School District without providing due process to the subject parents effected therewith.

Initially, there was limited evidence to support broad masking policies for the general public, and the Centers for Disease Control and Prevention recommended masks only for those infected and medical providers treating them. On April 3, 2020, the Center for Disease Control (hereinafter "CDC") reversed course and recommended that everyone wear face coverings in public, citing new data that showed a "significant portion" of people infected with the coronavirus lack symptoms but can spread the virus to others.

But the effectiveness of masks is now being challenged again — fueled, in part, by contradictory signals sent by the CDC. On May 13, 2021 the CDC updated its guidance to say "fully vaccinated people no longer need to wear a mask or physically distance in any setting." But two months later, with COVID-19 cases on the rise and the delta variant becoming dominant in the U.S., the CDC changed course again — recommending "fully vaccinated people to wear a mask in public indoor settings in areas of substantial or high transmission."

While Scientists and purported experts figure out the science behind the virus, CCSD students are forced to endure wearing masks for 6-8 hours a day, while in school and engaging in extra-curricular school activities. Simply put, the science simply does not justify the adverse effects caused to students on a daily basis for 6-8 hours a day, five (5) days a week.

Notwithstanding same, parental rights on medical decisions for their children cannot be abrogated by Executive emergency mandates and the State without due process being afforded.

**THE SCIENCE IN SHORT**

The physical properties of medical and non-medical facemasks suggest that facemasks are ineffective to block viral particles due to their difference in scales[i]. According to the current knowledge, the virus SARS-CoV-2 has a diameter of 60 nm to 140 nm [nanometers (billionth of a meter)], while medical and non-medical facemasks' thread diameter ranges from 55 µm to 440 µm [micrometers (one millionth of a meter), which is more than 1000 times larger. Due to the difference in sizes between SARS-CoV-2 diameter and facemasks thread diameter (the virus is 1000 times smaller), SARS-CoV-2 can easily pass through any facemask. In addition, the efficiency filtration rate of facemasks is poor, ranging from 0.7% in non-surgical, cotton-gauze woven mask to 26% in cotton sweeter material. With respect to surgical and N95 medical facemasks, the efficiency filtration rate falls to 15% and 58%, respectively when even small gap between the mask and the face exists. *Id.*

Due to the lack of consistent science justifying mask mandates on students in Clark County, coupled with the notion that such a mandate in *parens patriae* without due process does not comply with the least restrictive means possible and violation of the Fourteenth and Ninth Amendments, this Court should enjoin Defendants' mandates requiring all students in Clark County follow said mandates.

**JURISDICTION**

This court has subject matter jurisdiction over Plaintiffs' claims arising under federal law pursuant to 42 U.S.C. §1983. Plaintiffs further allege that the exercise of this court's jurisdiction over such claims is proper under the rule of *Ex Parte Young, 209 U.S. 123 (1908)*

4

(plaintiffs alleging violation of federal law may seek prospective injunctive relief against responsible state official).

**STATEMENT OF FACTS**

This action challenges the constitutionality of Defendants' Orders and Emergency Directives to curb Plaintiffs' civil rights and liberties by ordering draconian measures and engaging in the intentional infliction of emotional distress of school children and their parents, by mandating students of all Clark County School District, fully masked while attending school. The Due Process Clause of the United States Constitution does not permit a state to infringe on the fundamental right of parents to make child rearing decisions, including arbitrarily forcing children to wear masks in school without due process afforded.

The COVID-19 pandemic still exists and has existed – unabated and unsuppressed – in Nevada since both the declaration of Emergency in March, 2020 and the initiation of the vaccine roll outs in December, 2020.

On July 27, 2021, the Clark County School District issued an Updated Mask and Health Guidance for the 2021-22 School Year, requiring students to wear face masks while inside school buildings/facilities, unless medical or developmental conditions prohibit use. Said guidelines also require all students to wear face masks on all District buses, unless medical or developmental conditions prohibit use.

The CDC issued updated guidance for COVID-19 prevention in K-12 schools on July 9, 2021, which provides, in relevant portion, as follows: • Masks should be worn indoors by all individuals (age 2 and older) who are not fully vaccinated. CDC recommended schools maintain at least 3 feet of physical distance between students within classrooms, combined with indoor mask wearing by people who are not fully vaccinated. *See Centers for Disease*

*Control and Prevention, Guidance for COVID-19 Prevention in Kindergarten (K)-12 Schools, updated July 9, 2021.*

According to the CDC, children with COVID-19 typically have mild symptoms or no symptoms at all.  The estimated infection fatality rate for children ages 0-17 is 0.00002%.  Put another way, children have a one in a million risk of dying from COVID-19. Moreover, a recent review found that the mortality risk for children without serious pre-existing conditions is effectively zero. *Think Twice Before Giving the COVID Vax to Healthy Kids | MedPage Today*

For all children, the mortality risk from a COVID-19 infection is lower than from seasonal influenza. [ii] The risk of severe disease or hospitalization is about the same. There is currently no evidence of any increased mortality risk from any variant of COVID-19, including the Delta variant.

On August 4, 2021, Defendant Sisolak issued Emergency Directive 048 which provides in pertinent part:

> **Face coverings are required in county school district, charter school, and private school settings as provided in this Section.**

> **In counties with a population of 100,000 or greater, all kindergarten through 12th grade students (regardless of whether they would be exempt from the face covering requirement based on their age) must wear face coverings while inside school buildings unless granted an exemption consistent with this Section. Face coverings are required indoors regardless of vaccination status.**

If allowed to stand, Defendants' Orders and Emergency Directives will not only continue to violate Plaintiffs' rights under the United States' Constitution, but Defendants will continue to inflict massive emotional distress on students and parents across Clark County School District. Defendants' Emergency Powers is a clear and blatant abuse of the intent of NRS 414.040.

6

Nowhere in the history of the State of Nevada, has any Governor ever declared an Emergency for 18 months under NRS 414.060. Such declarations and Emergency Orders are arbitrary and wanton violations of Plaintiffs' Constitutional rights and lack due process. Further, Defendants' emergency orders are unsubstantiated or alternatively by little or contradictory scientific data.

## LEGAL AUTHORITY

### A.    STANDARD FOR INJUNCTION

A motion for a preliminary injunction is governed by the multi-factor test outlined by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).* Under the *Winter* test, the plaintiff has the burden to establish: (1) likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *Id.* Likelihood of success on the merits is a threshold inquiry and the most important factor. *See, e.g., Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019).*

Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. *NRDC v. Winter, 518 F.3d at 677 (internal citations omitted).*[iii] In our circuit, there is no presumption that the issuance of a preliminary injunction requires an evidentiary hearing. *See Int'l Molders' & Allied Workers' Local Union v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).*

### 1.    *Likelihood of Success on the Merits*

Plaintiffs are likely to prevail on the merits, or at least have raised a serious question to the merits of their procedural and substantive due process claims against Defendants. To

prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a federal

right by a person acting under color of state law.  The Ninth Circuit has repeatedly stated that

"[t]o obtain relief on a procedural due process claim, the plaintiff must establish the existence

of (1) a liberty or property interest protected by the constitution; (2) a deprivation of the

interest by the government; 3) lack of process." *See Shanks v Dessel, 540 F.3d 1082, 1090

(9th Cir. 2008).*

Procedural due process concerns are not satisfied simply by providing notice and a

hearing. The Ninth Circuit has firmly ruled that procedural due process is violated when an

adjudicative decision maker deprives a person of protected property interests on the grounds

of bias, prejudice, partiality, or maliciousness, regardless of whether there was notice and/or a

hearing. *Clements v Airport Authority of Washoe County, 69 F.3d 321, 333 ( 9th Cir. 1995).*

Here, Plaintiffs are forced to send their children to schools in Clark County in masks.

The students are forced to endure their faces covered for 6-8 hours a day, during class

instruction and in all after school extra-curricular activities. Never were parents given the

option to participate in the decision-making medical process which affects the welfare of their

children. Never was evidence presented to demonstrate a compelling reason to issue such

mandates by the State.

In *American Trucking Associations v. City of Los Angeles*, the Ninth Circuit

referenced *Winter* in its application of the traditional test and held that "as the Court

explained, an injunction cannot issue merely because it is possible that there will be an

irreparable injury to the plaintiff; it must be likely that there will be." *See Am. Trucking

Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (emphasis added).*

The Supreme Court made clear in *Winter* that the balancing of harms, and review of

the public interest, must occur in the context of the specific relief requested. *Winter v.*

*Natural Res. Def. Council (Winter)*, 129 S. Ct. 365, 376 (2008). This approach was applied by the Ninth Circuit in *Sierra Forest Legacy v. Rey*, when it overturned a district court's denial of preliminary injunctive relief for failure to analyze the balancing of harms and public interest in the context of the narrow injunction requested by environmental plaintiffs. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022–23 (9th Cir. 2009) (citations omitted) (*"When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction."*).

Here, every day that passes during this school year wherein students are forced to comply with an arbitrary and unconstitutional mask mandate directly and irreparably harms Plaintiffs by precluding them from obtaining an education in a normalized setting. The psychological health risks are delineated *infra*.

**B.      DEFENDANTS ACTS OF *PARENS PATRIAE* DOCTRINE IS A GROSS VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS AND HARMFUL TO STUDENTS**

*Parens patriae* is a Latin term meaning "parent of the fatherland." In law, it is the power of the government to intervene on the behalf of individuals or groups of individuals who are unable to represent their own interests.

This *parens patriae* jurisdiction is a right of sovereignty and imposes a duty on the sovereignty to protect the public interest and to protect such persons with disabilities who have no rightful protector.

Here, Defendants have bypassed parents' rights under the Fourteenth and Ninth Amendments to the United States Constitution and have issued a meritless mandate without due process afforded. Data collected by the COVID-19 School Response Dashboard, run by education groups including the School Superintendents Association, found that schools and school districts ***without mask mandates*** had lower case rates than schools with mandates.

1

2

*1.*      ***Defendants Fail to Present Sufficient Evidence to Justify that the Mask Mandate***

3

4

5

6

7

Face masks were designed to be worn in hospitals to prevent saliva droplets from landing on patients and fellow staff. But for students, wearing a face mask for up to seven hours per day — 10 for students in extracurriculars — along with social distancing in school and constant reminders of danger presents some hygiene health risks — and significant mental health risks.[iv]

8

9

10

11

12

13

14

15

16

The Journal of the American Medical Association published a research letter suggesting high levels of carbon dioxide detected in children wearing masks. "There may be some increase in CO2, but that increase is not physiologically significant," said Dr. David Cornfield, Chief of Pulmonary, Asthma, and Sleep Medicine and medical director of respiratory therapy at Lucile Packard Children's Hospital Stanford. The physiological and psychological effects of wearing facemask and their potential health consequences include the following provided in the chart in *Exhibit "3"*.

17

18

19

20

21

22

23

24

25

26

27

According to the randomized clinical trial out of Germany after three minutes of mask-wearing, younger children reported high levels of carbon dioxide.[v] Dr. Cornfield says this could be attributed to multiple factors.  Reducing virus contamination using facemasks remains a topic of heated debate among scientists and policy makers [6-9]. At the outset of the pandemic, World Health Organization (hereinafter "WHO") experts advised that use of facemasks is not recommended as potential benefits are rather limited and there is a potential risk of self-contamination if used improperly. Moreover, the WHO stated in their report of June 5 "At present, there is no direct evidence (from studies on Covid-19 and in healthy people in the community) on the effectiveness of universal masking of healthy people in the community to prevent infection with respiratory viruses, including Covid-19[vi]

28

Contamination of the upper respiratory tract by viruses and bacteria on the outside of medical face masks has been detected in several hospitals.[vii] Another research shows that a moist mask is a breeding ground for (antibiotic resistant) bacteria and fungi, which can undermine mucosal viral immunity. Limited experimental and observational studies report a reduced risk of SARS-CoV2 virus transmission of 6-80%: the effectiveness varies greatly depending on the type and quality of the masks, the basic contamination level of the studied population, laboratory test used, and epidemic context.[viii] Aside from the highly variable protective effects, WHO mentions several negative aspects of frequent / long-term use of facemasks, fueling the debate as to whether the benefits outweigh the drawbacks.  Many people report claustrophobic experiences and difficulty getting sufficient oxygen due to the increased resistance to inhaling and exhaling. This can lead to an increased heart rate, nausea, dizziness and headaches and several other symptoms.[ix]

In an inquiry among Belgian students wearing mouth masks for one week, 16 % reported skin problems and 7 % sinusitis; Also, problems with eyes and headaches and fatigue were frequently mentioned [x]

Furthermore, face masking can provoke an increase in stress hormones with a negative impact on immune resilience in the long term. Facemasks prevent the mirroring of facial expressions, a process that facilitates empathetic connections and trust between pupils and teachers. This potentially leads to a significant increase in socio-psychological stress.

During childhood and puberty, the brain undergoes sexual and mental maturation through hormonal epigenetic reprogramming.[xi] Several studies show that long-term exposure to socio-psychological stress leaves neuro-epigenetic scars that are difficult to cure in young people and often escalate into mental behavioral problems and a weakened immune system.[xii] A recent study by the CDC concludes that in young adults (18-24 years), the level of anxiety

11

and depression has increased by 63% (!) since the corona crisis. A quarter of them think about suicide. As a result, the use of antidepressants has increased by 25%.[xiii] Several researchers have shown a relationship between the increase in stress experiences and the risk of upper respiratory tract infections and mortality.[xiv]

It is clear that the efficacy of the mask to substantiate a mandate on school children in Clark County is simply not there when balanced with the damage to children from same. Defendants simply are unable to justify the science behind the arbitrary mandate to allow them to engage in *parens patrie*.

## C.   REGARDLESS OF THE EFFICACY OF DEFENDANTS' MANDATE, THERE IS NO JUSTIFICATION FOR THE VIOLATION OF PLAINTIFFS' DUE PROCESS RIGHTS UNDER THE FIFTH, NINTH AND FOURTEENTH AMENDMENTS

While not explicitly defined in the U.S. Constitution, the Supreme Court has "acknowledged that certain unarticulated rights are implicit in enumerated guarantees…. Yet these important but unarticulated rights [association, privacy, presumed innocent, etc.] have nonetheless been found to share constitutional protection in common with explicit guarantees." *Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 579-580 (1980)*.

### 1.   *Defendants' Overburdensome Mask Mandates is a Violation of Plaintiffs' Ninth Amendment Rights*

The Ninth Amendment to the United States Constitution provides "[T]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *Id*.

The Ninth Amendment has generally been regarded by the courts as negating any expansion of governmental power on account of the enumeration of rights in the Constitution, but the Amendment has not been regarded as further limiting governmental power. The U.S. Supreme Court explained this, in *U.S. Public Workers v. Mitchell 330 U.S. 75 (1947)* "If

12

granted power is found, necessarily the objection of invasion of those rights, reserved by the

Ninth and Tenth Amendments, must fail." *Id.*

Ultimately, as we can see through history, that the purpose of the Ninth Amendment is

to ensure that all individual natural rights had the same stature and force the preceding writes

incorporated into the first Eight Amendments.  This historical roadmap can be seen into the

two benchmark cases of *Griswold v Connecticut  381 U.S. 479;85 S. Ct. 1678; 14 L. Ed. 2d

510 (1965)* and *Roe v Wade 93 S. Ct. 705; 35 L. Ed. 2d 147(1973)*.  Justice Arthur

Goldberg (joined by Chief Justice Earl Warren and Justice William Brennan) expressed this

view in a concurring opinion in the case of *Griswold v. Connecticut* (1965):

> The Framers did not intend that the first eight amendments be construed to
> exhaust the basic and fundamental rights ... I do not mean to imply that the ...
> Ninth Amendment constitutes an independent source of rights protected from
> infringement by either the States or the Federal Government ... While the Ninth
> Amendment – and indeed the entire Bill of Rights – originally concerned
> restrictions upon federal power, the subsequently enacted Fourteenth
> Amendment **prohibits the States as well from abridging fundamental
> personal liberties.** And, the Ninth Amendment, in indicating that not all such
> liberties are specifically mentioned in the first eight amendments, is surely
> relevant in showing the existence of other fundamental personal rights, now
> protected from state, as well as federal, infringement. In sum, the Ninth
> Amendment simply lends strong support to the view that the "liberty" protected
> by the Fifth and Fourteenth Amendments from infringement by the Federal
> Government or the States is not restricted to rights specifically mentioned in
> the first eight amendments. [*Emphasis added*] *Griswold v. Connecticut, 381
> U.S. 479 (1965)*; Cf. *United Public Workers v. Mitchell, 330 U.S. 75, 94–95.*

Since *Griswold*, some judges have tried to use the Ninth Amendment to justify

judicially enforcing rights that are not enumerated. For example, the District Court that heard

the case of *Roe v. Wade* ruled in favor of a "Ninth Amendment right to choose to have an

abortion," although it stressed that the right was "not unqualified or unfettered." *Roe v.

Wade, 314 F. Supp. 1217 at 1223 (1970).*

However, Justice William O. Douglas rejected that view; Douglas wrote that "The Ninth Amendment obviously does not create federally enforceable rights." See *Doe v. Bolton 410 U.S. 179 (1973).* Douglas joined the majority opinion of the U.S. Supreme Court in *Roe*, which stated that a federally enforceable right to privacy, "whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Roe v. Wade, 410 U.S. 113 (1973).*

The Sixth Circuit Court of Appeals stated in *Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991)* that the Ninth Amendment was intended to vitiate the maxim of *expressio unius est exclusio alterius* [xv] according to which the express mention of one thing excludes all others:

> [T]he ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law. The ninth amendment was added to the Bill of Rights to ensure that the maxim expression unique est exclusion alterius would not be used at a later time **to deny fundamental rights** merely because they were not specifically enumerated in the Constitution.
> [*Emphasis added*]

Justice Antonin Scalia expressed the view, in the dissenting opinion of *Troxel v. Granville, 530 U.S. 57 (2000)*, that:

> The Declaration of Independence ... is not a legal prescription conferring powers upon the courts; and the Constitution's refusal to "deny or disparage" other rights is far removed from affirming any one of them, and even farther removed from authorizing judges to identify what they might be, and to enforce the judges' list against laws duly enacted by the people.
> *Id*

Here, the Ninth Amendment rights while independently, do not give parents a right to maintain an action against Defendants' mask mandate. But, coupled with both the lack of

14

Substantive and Procedural Due process of the Fifth and Fourteenth Amendments, allow this Court to the same interpretation that predecessor cases provide the basis for; leaving this Court with the following examination to undertake: Have Defendants violated Plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment through the Ninth Amendment, unenumerated rights by issuing mask mandates, without due process which the efficacy thereof is called into serious question.

2.   ***The Mask Mandate Violates Plaintiffs' Substantive and Procedural Due Process Clauses of the 14th Amendment.***

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law."  The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana, 391 U.S. 145, 147-149 (1968).*

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)); see also, e.g., Assoc. Press v. Otter, 682 F.3d 821, 826 (9th Cir. 2012)* It is always in the public interest to prevent the violation of a party's constitutional rights." *Padilla v. Immigration &. Customs Enforcement,* 953 F.3d *1134,* 1147–48 *(9th Cir. 2020).*

A claim of interference with the parent/child relationship may be brought as either a procedural due process claim or a substantive due process claim. Whether a claim is procedural or substantive depends on whether the state action was "for the purpose of furthering legitimate state interests." *Smith v. City of Fontana, 818 F.2d 1411, 1419 (9th Cir. 1987).* Substantive due process claims typically involve egregious conduct or the use of excessive force. But official conduct only violates substantive due process when it "shocks the

conscience." *Gantt v. City of Los Angeles, 717 F.3d 702, 707 (9th Cir. 2013) (citing Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010))*.

For a case that may blur the distinction between procedural and substantive due process, *see Mann v. County of San Diego, No. 16-56657 (9th Cir. 2018)* (holding that county violated parents' Fourteenth Amendment substantive due process rights by performing medical examinations on parents' children without notifying parents and without obtaining either parents' consent or judicial authorization).

### 3. *There Has Been No Neutral Fact Finder That Determined That Children Attending School Unmasked Is Not in the Children's Best Interest.*

The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Id. (citing Parham v. J.R. , 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), and Calabretta v. Floyd , 189 F.3d 808 (9th Cir. 1999).*

In an emergency medical situation, the County may proceed with medically necessary procedures without parental notice or consent to protect the child's health. *See Mueller v. Auker , 700 F.3d 1180, 1187 (9th Cir. 2012)* ("[P]arents have a 'constitutionally protected right to the care and custody of their children' and cannot be 'summarily deprived of that custody without notice and a hearing,' except where 'the children are in imminent danger.' ") (quoting *Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997) )*. When there is a "reasonable concern that material physical evidence might dissipate," notice and consent may not be required. *See Wallis v Spencer, 202 F.3d 1126, 1141 (9th Cir. 2000)*.

Here, there is no such medical emergency to deny Plaintiffs' due process rights and make medical decisions on their behalf, nor have Defendants' proven such emergency to justify same.

16

There is no doubt that Plaintiffs have a liberty interest in the "care, custody, and control of their child[ ]." *Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Lehr v. Robertson, 463 U.S. 248, 256–57, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).* It is also the case, however, that like all constitutional rights, these rights are not absolute.

As the Supreme Court has said, a state "has an urgent interest in the welfare of the child...." *Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); see also J.B. v. Washington Cnty., 127 F.3d 919, 925, 927 (10th Cir.1997) (parents' liberty interest in the custody and care of their children is balanced against the state's "traditional and transcendent" interest in "acting as parens patriae "* to protect children); *Thomason v. SCAN Volunteer Servs., Inc., 85 F.3d 1365, 1371 (8th Cir.1996)* "[T]he liberty interest in familial relations is limited by ***the compelling government interest*** in the protection of minor children, particularly in circumstances ***where the protection is considered necessary as against the parents themselves*.**" [*Emphasis added*] (quoting *Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir.1987) (internal quotation marks omitted)).*

When do the constitutional rights of parents step aside? "In an emergency situation ... ***when the children are subject to immediate or apparent danger or harm.*** " [*Emphasis added*] *Ram v. Rubin , 118 F.3d 1306, 1310 (9th Cir. 1997); Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir.1991).;Lossman v. Pekarske, 707 F.2d 288, 291 (7th Cir.1983)* ("When a child's safety is threatened, that is justification enough for action first and hearing afterward.").

In discussing the rights of parents to make medical decisions for their children, the Ninth Circuit made the following observations "[T]he right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state. *See Parham v. J.R., 442 U.S. 584, 602 (1979) (holding that **it is in the interest of both parents and children that parents have***

**_ultimate authority to make medical decisions for their children unless "neutral fact finder"_**

**_determines, through due process hearing, that parent is not acting in child's best interests_**);

*[Emphasis added]* see also *Calabretta v. Floyd,* 189 F.3d 808 (9th Cir. 1999) (holding that

"[t]he government's interest in the welfare of children embraces not only protecting children

from physical abuse, but also protecting children's interest in the privacy and dignity of their

homes and in the lawfully exercised authority of their parents.").

The interest in family association is particularly compelling at such times, in part

because of the possibility that a need to make medical decisions will arise, and in part because

of the family's right to be together during such difficult and often traumatic events.

*Wallis v. Spencer,* 202 F.3d 1126, 1141-42 (9th Cir. 2000).

At the outset, there is **_no emergency situation_** which justifies the denial of parents'

ability **_or rights_** to participate in the decisions regarding the mask mandates prior to the

issuance of same. The mandate was issued via Executive Directive without public notice or

hearing, a blatant denial of Plaintiffs' due process rights. Such a blatant interference with

fundamental rights of parental determination of medical care of their children, cannot be

condoned by this Court. Accordingly, this mandate must be immediately enjoined and

parental participation must be allowed.

**D.   DEFENDANTS MUST DEMONSTRATE THAT THIS MANDATE WAS
     ISSUED TO FURTHER A COMPELLING GOVERNMENT INTEREST AND
     MUST BE NARROWLY TAILORED TO ACHIEVE THAT INTEREST**

The Due Process Clause of the Fourteenth Amendment provides that no State shall

"deprive any person of life, liberty, or property, without due process of law." U.S. CONST.

amend. XIV, § 1. The Supreme Court has interpreted this guarantee "to include a substantive

component, which forbids the government to infringe certain 'fundamental' liberty interests at

all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores, 507 U.S. 292, 301–02 (1993).*

To survive strict scrutiny, the government must show that "the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).*

The Supreme Court has long held that "the right of parents to make decisions concerning the care, custody, and control of their children is a fundamental liberty interest protected by the Due Process Clause," and that this right includes "the right of parents to be free from state interference with their choice of the educational forum itself." *Fields v. Palmdale School District, 427 F.3d 1197, 1204,1207 (9th Cir. 2005)*

Thus, even as the Court has "'always been reluctant to expand the concept of substantive due process,'" it has repeatedly reaffirmed its recognition, in *Meyer v. Nebraska, 262 U.S. 390 (1923)* and *Pierce v. Society of Sisters, 268 U.S. 510 (1925).*, of a "fundamental right[]" to "direct the education and upbringing of one's children." *Glucksberg, 521 U.S. at 720 (citation omitted); see also Troxel, 530 U.S. at 65 (plurality)* (describing the *Meyer*-right as "perhaps the oldest of the fundamental liberty interests recognized" by the Court); *Id. at 80.* In *Meyer*, the Supreme Court struck down the Nebraska statute, concluding that it impermissibly "attempted materially to interfere . . . with the power of parents to control the education of their own." *Id. at 401.*

To satisfy strict scrutiny, Defendants must show that their infringement of the Plaintiffs' rights is "narrowly tailored" to advance a "compelling" state interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993).* "Stemming the spread of Covid-19 is unquestionably a compelling interest." *Catholic Diocese of Brooklyn v Cuomo, 592 U.S. ____ (2020).* The only question, therefore, is whether the State has shown that its

broad mandate of compelling students to wear facial masks to attend in person school satisfies the narrowly tailored requirement as a matter of law.

## E.      THIS COURT CAN ENJOIN THE MANDATE IMMEDIATELY

Importantly and most recently, *Whole Woman's Health Et Al v. Austin Reeve Jackson, Judge Et Al* 594 U. S. _____ (2021) demonstrates that this Court does have the authority to enjoin the mandate under the jurisprudence cited above, including *Roe v Wade, Griswold v Connecticut* and *Troxel v Granville.*

As the dissent cited in *Whole Woman's Health Et Al*[xvi] this Court is authorized to permit those whom a law threatens with constitutional harm to bring pre-enforcement challenges to the law where the harm is less serious and the threat of enforcement less certain than the harm (and the threat) here. *See Virginia v. American Booksellers Assn., Inc., 484 U. S. 383, 392–393 (1988); Babbitt v. Farm Workers, 442 U. S. 289, 298 (1979); see also Susan B. Anthony List v. Driehaus, 573 U. S. 149, 164 (2014)* (finding substantial threat of future enforcement where statute permits "'any person'" to file a complaint and "the universe of potential complainants is not restricted").

Normally, where a legal right is "'invaded,'" the law provides "'a legal remedy by suit or action at law.'" *Marbury v. Madison, 1 Cranch 137, 163 (1803) (quoting 3 W. Blackstone Commentaries *23).* Here, these Plaintiffs bring action to this Court before violation of any mask mandate by their minor children, or any other children similarly situated.

## F.      PLAINTIFFS ARE LIKELY TO SUFFER IRREPERABLE HARM

To obtain a TRO, Plaintiffs must show they will suffer irreparable harm in the absence of the order. *Winter, 555 U.S. at 20.* Notwithstanding same, Plaintiffs' Procedural and Substantive Due Process rights have been violated without any justification for same. Parents are unjustifiably denied their Ninth Amendment rights over child rearing and making medical

decisions on behalf of their children. This mandate continues unabated and unjustified for now 30 days into the school year with no indication of ending without Court interference of same.  The medical community as suggested *supra* has provided ample evidence of the irreparable harm that such mandates will have on these students.

**G.     BALANCE OF EQUITIES FAVORS PLAINTIFFS**

> **1.     *Defendants Have Not Demonstrated That Masking Children in Classes Is Narrowly Tailored to a Compelling State Interest When More than Half the States Have No Mask Mandates***

The U.S. states and territories with mask mandates for everyone, regardless of vaccination status are District of Columbia , Guam, Hawaii, Illinois, Louisiana, Nevada, New Mexico, Puerto Rico, US Virgin Islands, Washington  |  The States with mask mandates for the unvaccinated are California, Connecticut and New York.  These are the U.S. states and territories without mask mandates:

Alabama | Alaska | AmericanSamoa | Arizona | Arkansas | Colorado | Delaware | Florida | Georgia | Idaho | Indiana | Iowa | Kansas | Kentucky | Maine | Maryland | Massachusetts | Michigan | Minnesota | Mississippi | Missouri | Montana | Nebraska | New Hampshire | New Jersey | North Carolina | North Dakota | Northern Mariana Islands | Ohio | Oklahoma | Pennsylvania | Rhode Island | South Carolina |  South Dakota | Tennessee |  Texas | Utah | Vermont | Virginia |  West Virginia | Wisconsin | Wyoming

It is abundantly clear by the fact that 41 States in this Country do not have mask mandates whether the individual is vaccinated or not that the efficacy of same should be in questions as applied to Clark County School District. The fact that these States' Governors have engaged in the discretionary act of not issuing mask mandates should be a clear indication of the strict scrutiny that Defendants' must overcome to justify mask mandates

under these so-called emergency orders based on science. Moreover, Defendants have still failed to demonstrate how the mask mandates are narrowly tailored to further a compelling State interest in Nevada- when said interest does not exist in any of the 41 states that don't have mask mandates in schools. Additionally, looking at the latest CDC data, it is clear that children and teenagers still fall within the following groups of less than a 1% mortality rate (with childhood comorbidities) as demonstrated in the charts demonstrated as *Exhibit "4"*.[xvii]

Evaluating whether a government measure is narrowly tailored is not simply a matter of ordinary fact-finding, however. Narrow tailoring is viewed as a mixed question of fact and law that requires a delicate balancing of legal principles as applied to specific circumstances. *See Gilbrook v. City of Westminster, 177 F.3d 839, 861 (9th Cir. 1999); Gerritsen v. City of Los Angeles, 994 F.2d 570, 575 (9th Cir. 1993).*

Plaintiffs must also show that the balance of equities tips in their favor. *Winter, 555 U.S. at 20.* The data provided above is a canvas of all States and positivity cases across the Country which clearly demonstrates that the efficacy of facemasks in the classrooms is at best questionable to prevent the spread of Covid-19. Notwithstanding the efficacy of such mask mandate, Defendants still fail to fulfill the requirements of due process and demonstrate that the States' action should stand in place of parental decisions regarding their children's health.

## H.   AN INJUNCTION IS IN THE PUBLIC INTEREST

Lastly, to obtain a TRO, Plaintiffs must show that the granting of a TRO is in the public interest., *555 U.S. at 20.* The public interest is furthered by preventing the violation of a party's constitutional rights. *Free the Nipple v, City of Ft. Collins, Colo, 916 F.3d 792 (2019).* "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd'* sub nom. *Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) (quotations omitted).*   Because the

22

requested injunction will accomplish this, the public interest also favors an order protecting

Plaintiffs making the grant of an injunction in this case a matter of overwhelming public

interest.

## **CONCLUSION**

Plaintiffs agree that no one, has a right "to expose the community…to communicable

disease." *Jacobson v. Massachusetts, 197 U.S. 11, 27 (1905). Prince v. Massachusetts, 321*

*U.S. 158, 166–67 (1944).* But the arbitrary mask mandate on Nevada's students without

demonstrating that Plaintiffs were provided with substantive and procedural due process,

which, produced a finding that the State must stand in *Parens Patriae* over their children is

unconstitutional. The Fifth, Ninth and Fourteenth Amendments preclude Defendants from

issuing  a mandate mask use across the State and therefore must be enjoined.

Furthermore, despite 30 days of school resumed in Clark County, Defendants have no

answers as to how long will students be required to wear face masks. Are students expected to

wear masks forever? Will there be parental discretion ever in the future, when it comes to

efficacy and treatment of this virus, or will the State continue to engage in arbitrary health

decisions for parents in violation of their constitutional rights. Plaintiffs, and parents similarly

situated are entitled to these answers by Defendants.

Accordingly, Plaintiffs request an injunction be issued as follows:

1.      Permanently enjoin Defendants and all persons and entities in active concert or

participation with Defendants from the arbitrary mask mandates in Clark County School

District.

2.      Issue an Order mandating that Defendants immediately allow Plaintiffs and

other members of the public send their children to school without masks during in person

instruction;

1         3.     Issue an Order mandating that the if Defendants are acting in *Parens Patriae*,

2    that said interference should be issued only under the requirements of substantive and

3    procedural due process;

4         DATED this _20th_ day of September 2021.

5

6                                     **CHATTAH LAW GROUP**

7                               */s/ Sigal Chattah*

8                               SIGAL CHATTAH, ESQ.

9                               CHATTAH LAW GROUP

10                              5875 S. Rainbow Blvd. #203
                                Las Vegas, Nevada 89118
                                Tel.:(702) 360-6200
                                *Attorney for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28