MARK E. FERRARIO
Nevada Bar No. 01625
KARA B. HENDRICKS
Nevada Bar No. 07743
WHITNEY L. WELCH-KIRMSE
Nevada Bar No. 12129
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
        hendricksk@gtlaw.com
        welchkirmsew@gtlaw.com

*Counsel for Defendant Clark County School District*

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MONICA BRANCH-NOTO, individually and on behalf of JOHN DOE MINOR NO. 1, as guardian of said minor, TIFFANY PAULSON, individually and on behalf of JOHN DOES MINOR NO. 2 and JANE DOE MINOR NO. 1, as guardian of said minors,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as the Attorney General of the State of Nevada, CLARK COUNTY SCHOOL DISTRICT, a public entity, DOES 1 Trough 100,<br><br>Defendants. | Case No. 2:21-cv-01507-JAD-DJA<br><br>**CCSD'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION [ECF #8]** |

Clark County School District ("CCSD"), by and through its undersigned counsel, GREENBERG TRAURIG, LLP, hereby submits this Response in Opposition to Plaintiffs' Emergency Motion for Preliminary Injunction [ECF #8] ("Response").

1

## MEMORANDUM OF POINTS AND AUTHORITIES

> *Plaintiffs agree that no one has the right to expose the community to communicable disease.*

Motion at 23:5-6.

## INTRODUCTION

Plaintiffs' Emergency Motion for Preliminary Injunction ("Motion") seeks an extraordinary and drastic remedy that must be denied. Plaintiffs do not establish by a <u>preponderance of the evidence</u> the four factors required to grant injunctive relief: 1) Plaintiffs are not likely to succeed on the merits of their case; 2) Plaintiffs are not likely to suffer irreparable harm absent injunctive relief; 3) the balance of equities tips in CCSD's favor; and 4) an injunction is not in the public interest.[1] In fact, Plaintiffs' challenges to the constitutionality of CCSD's mask requirement have no basis in law or fact and do not come close to meeting the requirements of injunctive relief. As demonstrated in CCSD's Motion to Dismiss filed concurrently herewith, this Court should dismiss Plaintiffs' claims with prejudice, and should deny this Motion.

None of Plaintiffs' theories state viable claims under federal law, much less show likelihood of success on the merits. In their Complaint [ECF #1], Plaintiffs argue the Constitution gives students the right to an "unhindered education" in a normalized setting and gives parents the right to send their children to school "freely." Now, in seeking injunctive relief, Plaintiffs go beyond the allegations in their Complaint to argue that mask wearing is a medical decision with which CCSD's Policy interferes. The common flaw in Plaintiffs' theories is the failure to identify a protected liberty interest or fundamental constitutional right to decide whether their child (and in turn <u>all</u> children enrolled in CCSD) should wear a mask at school. Additionally, Plaintiffs will not be able to overcome the mounting legal authority in this Circuit and others finding that school mask requirements directed at mitigating the spread of COVID-19 satisfy rational basis review. As a result, Plaintiffs have not shown

---

[1] *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008).

2

and cannot show, by a preponderance of the evidence, that they are likely to succeed on the merits of their federal claims asserting violations of constitutional rights.[2]

Similarly, Plaintiffs do not show they are at risk of irreparable harm if this Court denies injunctive relief.  Because CCSD's Policy does not implicate a constitutionally protected right, there is no risk of a constitutional violation or injury.  Nor have Plaintiffs demonstrated any constitutional injury or risk of irreparable harm to the health of students.  Not even the sources cited by Plaintiffs support the argument that masks cause significant harm to student health.  At most, Plaintiffs identify potential harm as discomfort and inconvenience related to wearing a mask.  However, this does not meet the standard for irreparable harm.

Finally, Plaintiffs are not entitled to injunctive relief because the balance of hardships and the public interest weigh in CCSD's favor.  Numerous experts strongly recommend the use of face coverings in school as a method of source control to prevent transmission of COVID-19.   A community approach to infection control is reasonable and necessary under the current circumstances and benefits the public interest.  Furthermore, an injunction of CCSD's Mask Policy would undermine its efforts to maintain safe in-person instruction for all students as well as its employees.

Plaintiffs Motion does not satisfy any of the elements required to obtain injunctive relief; therefore, it should be denied.

**RELEVANT FACTUAL BACKGROUND**

**I.    CURRENT STATE OF THE COVID-19 PANDEMIC**

COVID-19 is an illness caused by a highly transmissible coronavirus that has been circulating in the U.S. since approximately January 2020.[3]  This virus is spread by breathing air close to an infected person or touching eyes, nose, or mouth with hands that are contaminated with the virus.[4]  Those infected who can spread the virus include persons of any age who are symptomatic,

---

[2] In the instant Motion, Plaintiffs requested relief is premised solely on a likelihood of success on Plaintiffs' federal claims.  The Motion does not address the merits of their claims for negligence or intentional infliction of emotional distress; therefore, CCSD does not address the deficiencies of those claims here.

[3] Center for Disease Control, How Coronavirus Spreads | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html

[4] *Id.*

3

asymptomatic and/or vaccinated.[5]   While people with COVID-19 have a wide range of symptoms from mild to severe, the most common are fever, chills, cough, fatigue and difficulty breathing.[6]   As of October 5, 2021, the U.S. has reported a total of 43,605,623 confirmed cases of COVID-19 (roughly 1 out of every 7 Americans) and 700,176 related deaths (roughly 1 out of every 500 Americans).[7] Clark County has consistently been a COVID-19 hot spot and is ranked the 13th highest county with 322,524 total confirmed cases of COVID-19.[8]   Out of that total, 42,047 of those cases have been children under 17 years of age.[9]   The SNHD reports that 390 children have been hospitalized and 6 children have died from COVID-19.[10]

In July 2021, Delta became the predominant variant of the virus in the U.S., with on average one Delta infected person transmitting the virus to 5 people.[11]   This re-focused mitigation measures on source control (i.e., limiting the spread of large droplets from an infected person's nose or mouth). In addition to being substantially more transmissible, the CDC reports that the Delta variant might cause more severe illness than previous strains in unvaccinated people.[12]   Children under 12 years of age are not currently approved to receive a COVID-19 vaccine.[13]

## II.   TRANSMISSION OF COVID-19 IN CLARK COUNTY

As of October 5, 2021, the CDC lists community transmission in Clark County as "high" with a COVID-19 positivity rate of 7.4%.[14]   Likewise, the White House COVID-19 Team recently issued

---

[5] Delta Variant: What We Know About the Science | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.htm

[6] Symptoms of COVID-19 | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html

[7] CDC COVID Data Tracker; Home - Johns Hopkins Coronavirus Resource Center (jhu.edu) (last accessed 10/4/2021), https://coronavirus.jhu.edu/

[8] COVID-19 Case and Vaccine Data – Southern Nevada Health District | COVID-19 (last accessed 10/4/2021), http://covid.southernnevadahealthdistrict.org/cases/; COVID-19 United States Cases by County - Johns Hopkins Coronavirus Resource Center (jhu.edu) (last accessed 10/4/2021), https://coronavirus.jhu.edu/us-map

[9] See SNHD Report dated October 4, 2021 attached hereto as **Exhibit A.** .20211004-Daily-Aggregate-COVID19.pdf (southernnevadahealthdistrict.org)

[10] Id.

[11] Center for Disease Control, Delta Variant: What We Know About the Science | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.htm

[12] Id.

[14] CDC COVID Data Tracker (last accessed 10/4/2021), https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total

4

a Report identifying Clark County as a "sustained hot spot" meaning there is a higher risk for experiencing healthcare resource limitations.[15]   The SNHD reports 3,133 confirmed new cases reported from September 27 to October 4, 2021.[16]

### III.   COVID-19 IN INDIVIDUALS UNDER 18

While Plaintiffs suggest that children are immune from COVID-19, that is unfortunately not accurate.  Most children who become infected with COVID-19 have only a mild illness; however, the Mayo Clinic linked Multisystem Inflammatory Syndrome in Children (MIS-C) to COVID-19 in rare instances.[17]   The Southern Nevada Health District has reported 83 confirmed cases of MIS-C in Clark County.[18]

According to the American Academy of Pediatrics, over 5.5 million children have contracted COVID-19.[19]   Notably, 1 million new pediatric cases were added nationwide since the start of the school year in August 2021.[20]   The CDC has also reported that weekly COVID-19 associated hospitalization rates among children and adolescents increased by 5 times since late June 2021 due to the Delta variant and increased exposure to the virus at school.[21]

### IV.   FEDERAL AND STATE GUIDANCE TO MITIGATE THE SPREAD OF COVID-19 IN SCHOOLS

Given the current vaccine coverage and high transmissibility of the Delta variant, the scientific

---

[15] COVID-19 Community Profile Report | HealthData.gov. (last accessed 10/4/2021), https://healthdata.gov/Health/COVID-19-Community-Profile-Report/gqxm-d9w9

[16] COVID-19 Case and Vaccine Data – Southern Nevada Health District | COVID-19 (last accessed 10/4/2021), http://covid.southernnevadahealthdistrict.org/cases/

[17] Multisystem inflammatory syndrome in children (MIS-C) and COVID-19 - Symptoms and causes - Mayo Clinic (last accessed 10/4/2021), https://www.mayoclinic.org/diseases-conditions/mis-c-in-kids-covid-19/symptoms-causes/syc-20502550

[18] COVID-19 Case and Vaccine Data – Southern Nevada Health District | COVID-19 (last accessed 10/4/2021), http://covid.southernnevadahealthdistrict.org/cases/

[19] Children and COVID-19: State-Level Data Report (aap.org) (last accessed 10/4/2021), https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/

[20] *Id*.

[21] Hospitalizations Associated with COVID-19 Among Children and Adolescents — COVID-NET, 14 States, March 1, 2020–August 14, 2021 | MMWR (cdc.gov) (last accessed 10/4/2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7036e2.htm

*ACTIVE 60556088v1*

community recommends layered prevention strategies to mitigate the spread of COVID-19.[22] Mask wearing is important in environments such as schools which bring people in close contact for prolonged periods.  Research has shown that especially indoors where maintaining social distancing is difficult, **wearing a mask reduces the spread of COVID-19.**[23]  More specifically, recent studies show that school districts without a universal masking policy were 3 times more likely to have COVID-19 outbreaks.[24]  Masks work because COVID-19 infection is primarily spread through exposure to large respiratory droplets exhaled by infected people when they breathe, talk, cough, sneeze or sing.[25]  Contrary to Plaintiffs' opinions, research has also shown that mask wearing has no significant adverse health effects for wearers, including children.[26]

Universal indoor masking by all students, staff, teachers, and visitors to K-12 schools regardless of vaccination status is recommended by the CDC,[27] the American Academy of Pediatrics,[28] the U.S. Department of Education,[29] and the Southern Nevada Health District[30] for schools in

---

[22] Center for Disease Control, Delta Variant: What We Know About the Science | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.htm

[23] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2 | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fmore%2Fmasking-science-sars-cov2.html.  Multi-layer cloth masks can both block between 50-70% of exhaled respiratory particles and limit the forward spread of those that are not captured.

[24] Studies Show More COVID-19 Cases in Areas Without School Masking Policies | CDC Online Newsroom | CDC (10/21/2021), https://www.cdc.gov/media/releases/2021/p0924-school-masking.htmlThe studies also found that counties without masking requirements saw the number of pediatric cases increase twice as quickly during the two weeks following the start of the school year.

[25] *See* CDC data slides on the science of masking attached hereto as **Exhibit B.**

[26] *Id*. Assessment of Respiratory Function in Infants and Young Children Wearing Face Masks During the COVID-19 Pandemic. - Abstract - Europe PMC (3/1/2021), https://europepmc.org/article/PMC/PMC7926283.  Further, while some studies have found an increase in reports of difficulty breathing when exercising in face masks, no physiologic differences were identified.

[27] Guidance for COVID-19 Prevention in K-12 Schools | CDC (last accessed 10/4/2021), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[28] COVID-19 Guidance for Safe Schools (aap.org) (last accessed 10/4/2021), https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/

[29] ED COVID-19 Handbook, Volume 1 (PDF) (last accessed 10/4/2021), https://www2.ed.gov/documents/coronavirus/reopening.pdf?source=email; *see* U.S. Dept. of Ed. Strategies for Safely Reopening Schools attached hereto as **Exhibit C.**

[30] 20210729-Mask-Guidance.pdf (southernnevadahealthdistrict.org), https://media.southernnevadahealthdistrict.org/download/hot-topics/2021/20210729-Mask-Guidance.pdf

*ACTIVE 60556088v1*

communities with high transmission levels of COVID-19 (like Clark County).  In fact, the U.S. Department of Education's Office for Civil Rights ("OCR") is currently investigating at least 8 states which have prohibited its schools from adopting mask requirements.[31]  "OCR is concerned that state mask restrictions on school districts may be preventing schools from meeting their legal obligations not to discriminate based on disability and from providing an equal educational opportunity to students with disabilities who are at heightened risk of severe illness from COVID-19."[32]

In July 2021, Governor Sisolak issued Emergency Order 047 ("EO47") in response to the climbing COVID-19 test positivity rate which reached over 15% and updated guidance from the CDC recommending universal masking in schools for all students and staff, regardless of vaccination status. EO47 required non-exempt individuals to cover their nose and mouth with a mask or face covering in a manner consistent with the guidance issued by the CDC.  Shortly thereafter, on August 4, 2021, Governor Sisolak issued Emergency Order 048 ("EO48") which requires face coverings in all public, charter, and private schools.[33]  The SNHD reports overall cases have been decreasing since August 2021 when masks again were required.[34]

## V.    CCSD'S MASK POLICY

Directed by EO47 and aligned with guidance from the CDC, AAP and SNHD, the Clark County School District issued updated health and safety protocols which include a mask policy for the start of the 2021 school year ("CCSD Policy").  Further, as a recipient of federal funds under the American Rescue Plan (ARP) Act, CCSD was required by federal law to "adopt a plan for the safe

---

[31] Department of Education's Office for Civil Rights Opens Investigations in Five States Regarding Prohibitions of Universal Indoor Masking | U.S. Department of Education (8/30/2021), https://www.ed.gov/news/press-releases/department-educations-office-civil-rights-opens-investigations-five-states-regarding-prohibitions-universal-indoor-masking

[32] Id.; Meeting the President's Call to Support the Safe and Sustained Reopening of Schools - ED.gov Blog (8/18/2021), https://blog.ed.gov/2021/08/meeting-the-presidents-call-to-support-the-safe-and-sustained-reopening-of-schools/

[33] Declaration-of-Emergency-Directive-048.pdf (nv.gov) (8/4/2021), https://nvhealthresponse.nv.gov/wp-content/uploads/2021/08/Declaration-of-Emergency-Directive-048.pdf

[34] 20210923-COVID-19-Trends-Clark-County-PUBLIC.pdf (southernnevadahealthdistrict.org) (9/23/2021), https://media.southernnevadahealthdistrict.org/download/COVID-19/updates/2021/September/20210923-COVID-19-Trends-Clark-County-PUBLIC.pdf.  This data suggests that kids in school masked are safer than kids unmasked at home.

1  return to in-person instruction and continuity of services".[35]

2  For the 2021-2022 school year, students attending CCSD were given the option to attend in

3  person or enroll in an online program known as Nevada Learning Academy at CCSD ("NVLA").  *See*

4  Declaration of Monica Cortez attached hereto as **Exhibit D, ¶6.**    CCSD expanded the services

5  provided through NVLA to include elementary school instruction and hired teachers and staff

6  dedicated to the program.  *Id*.  Families had up to and until September 10, 2021 to enroll students in

7  NVLA.  *Id*.  Students not enrolled in NVLA or other online program returned to the classroom on

8  August 9, 2021 and were required to wear masks consistent with CCSD Policy.

9  Per CCSD Policy, face masks are required to be worn indoors, including all CCSD buildings,

10  facilities, and on school busses by all individuals ages two and older regardless of vaccination status.[36]

11  Students actively exercising while at recess or in P.E. do not need to wear a face mask if activities are

12  taking place outdoors. *See* **Exhibit F**. Students who cannot safely wear a mask due to a disability or

13  medical condition, can request an accommodation such as a plastic face shield.  *See* **Exhibit D, ¶10.**

14  Plaintiffs do not identify any students which have been expelled or suspended for refusal to

15  wear a mask.   Likewise, Plaintiffs do not allege that any students were denied reasonable

16  accommodation despite meeting requirements to obtain an exemption.  CCSD has no record of the

17  student Plaintiffs or their parents requesting such an accommodation or opting to enroll in CCSD's

18  distance education program to avoid the purportedly harmful effects of mask wearing.

19  **PLAINTIFFS' ALLEGED FACTS DO NOT SUPPORT THEIR REQUESTED RELIEF**

20  A primary focus in Plaintiffs' Motion is the purported "lack of consistent science justifying

21  mask mandates." (Mot., 4:18-19).  This argument misses the mark for several reasons and does not

22  provide a basis to grant injunctive relief.  First, any evidence of face coverings reducing community

23  spread of COVID-19 by any amount, justifies CCSD's Policy under rational basis review.  Therefore,

24  Plaintiffs' alleged inconsistencies do not weigh in favor of injunctive relief.  Second, Plaintiffs' own

25

26  [35] 21-007071-Letter-from-Secretary-Cardona-Tennessee.pdf (ed.gov); American Rescue Plan Elementary and

27  Secondary School Emergency Relief - Office of Elementary and Secondary Education (8/18/2021), https://oese.ed.gov/offices/american-rescue-plan/american-rescue-plan-elementary-and-secondary-school-emergency-relief/

28  [36] *See* CCSD's Mask Policy attached hereto as **Exhibit E.**

8

sources do not support their contentions.

## I.    PLAINTIFFS' ALLEGED FACTS LACK CITATIONS.

While the Motion questions guidance from sources in the scientific community like the CDC, many of Plaintiffs' purported "facts" have no citation to any source.  For example, Plaintiffs' Exhibit 3 identifies the following "health consequences" from wearing a mask: stress, inflammation, fear, cancer, diabetes, Alzheimer's disease, accelerated aging, health deterioration, exacerbation of existing conditions and pre-disposition for future infections and illnesses.   Another example is Plaintiffs reference to data on a "COVID-19 School Response Dashboard" with no citation. While Plaintiffs argue the Dashboard found that "schools and school districts without mask mandates had lower case rates than schools with mandates," (Mot., 9:28)   Plaintiffs do not cite to any specific data or interpretation of the data that supports this conclusion.[37]   Notably, Plaintiffs do not address the recently published study from Arizona comparing case rates in similarly situated schools which found that those without mask requirements were 3.5 times more likely to experience an outbreak of COVID-19 compared to schools that started the 2021-2022 school year with mask requirements.[38]   Plaintiffs also ignore data showing areas without mask requirements have a higher death toll from COVID-19 per capita.[39]

---

[37] While Plaintiffs reference a "COVID-19 School Response Dashboard" they do not cite to any dashboard or any studies or interpretation of such data.  To the extent Plaintiffs are referencing COVID-19 School Response Dashboard (last accessed 10/8/2021) (https://covidschooldashboard.com/), the website states its data is through May 2021 and does not include recent data from this school year where the majority of schools have reopened for in-person learning.

[38] Association Between K–12 School Mask Policies and School-Associated COVID-19 Outbreaks — Maricopa and Pima Counties, Arizona, July–August 2021 | MMWR (cdc.gov) (last accessed 10/8/2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7039e1.htm?s_cid=mm7039e1_w; Pediatric COVID-19 Cases in Counties With and Without School Mask Requirements — United States, July 1–September 4, 2021 | MMWR (cdc.gov) (last accessed 10/8/2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7039e3.htm?s_cid=mm7039e3_w

[39] Tennessee Areas Without Mask Requirements Have Higher Death Toll Per Capita | Department of Health Policy (vumc.org) (November 10, 2020), https://www.vumc.org/health-policy/news-events/tennessee-areas-without-mask-requirements-have-higher-death-toll-capita; Trends in County-Level COVID-19 Incidence in Counties With and Without a Mask Mandate — Kansas, June 1–August 23, 2020 | MMWR (cdc.gov) (November 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6947e2.htm

*ACTIVE 60556088v1*

## II.     PLAINTIFFS' SOURCES SUPPORT CCSD'S POLICY

Plaintiffs argue that face coverings are not beneficial for students because they may not work perfectly 100% of the time (i.e., some virus can pass through) (Mot., 4:5-17; 10:23-24).  In support, Plaintiffs cite an article from April 2020, a year and a half ago, which states that at that time there was "limited knowledge available on the performance of various commonly available fabrics used in cloth masks."[40]  Nevertheless, the study discussed in Plaintiffs' cited article found that "combinations of various commonly available fabrics used in cloth masks can potentially provide significant protection against the transmission of aerosol particles."  In another example, Plaintiffs cite to a *2019* study on the presence of virus on masks used by healthcare workers.[41]  Finally, Plaintiffs cite to June 2020 interim guidance by the WHO[42] which states:

> "The use of masks is part of a comprehensive package of the prevention and control measures that can limit the spread of certain respiratory viral diseases, including COVID-19. Masks can be used either for protection of healthy persons (worn to protect oneself when in contact with an infected individual) or for source control (worn by an infected individual to prevent onward transmission)."

> "WHO has updated its guidance to advise that to prevent COVID-19 transmission effectively in areas of community transmission, governments should encourage the general public to wear masks in specific situations and settings as part of a comprehensive approach to suppress SARS-CoV-2 transmission."

Noticeably absent from Plaintiffs' own sources is the conclusion that masks are not beneficial.[43]  As discussed above, measures to curb transmission of COVID-19 have been studied extensively for the last 18 months and have shown that while layered mitigation strategies are best, masks are an integral

---

[40] *See* Plaintiffs' footnote i.

[41] *See* Plaintiffs' footnote vii.  The study found "respiratory pathogens on the outer surface of the used medical masks may result in self-contamination.  The risk is higher with higher rates of clinical contact."  Here, Plaintiffs ignore that infected particles on a health care worker's mask are likely to come from patients whereas in source control, the person wearing a mask is the most likely source of any virus on it.  Thus, self-contamination is not a concern.

[42] *See* Plaintiffs' footnote vi.

[43] Prior to the COVID-19 pandemic, most research on face coverings were undertaken in the context of health care workers and considered the extent to which they protect the wearer.  The current question is whether face coverings protect other people from droplets emitted by the wearer—a measure known as source control.  Source control works in a different way to wearer-protection—by blocking large droplets as they are emitted by an infected person when they talk, sneeze or cough.  On the other hand, face coverings protect the wearer by blocking tiny, aerosolized particles.  The goal is to substantially reduce the transmission rate of the virus.

part of mitigation strategy and source control.

**III.    PLAINTIFFS' SOURCES DO NOT DEMONSTRATE THAT MASKS CAUSE MENTAL OR PHYSICAL HARM.**

While Plaintiffs claim, "the medical community has provided ample evidence of the irreparable harm that such mandates will have on students," Plaintiffs' citations do not support this conclusion. (Mot., 6-7; 10:9-13; 11:11-12:4, 21:3-4).   For example, much of Plaintiffs argument regarding the negative mental health effects of masks are taken directly from an opinion article written by a freelance writer in Utah for the "Desert News".[44]   There, the Utah writer opines that masking children "does more harm than good" based on her discussions with school teachers who say masks cause anxiety because students are worried they will make everyone around them sick.[45]   Plaintiffs also cite to an article from the New York Times discussing reasons why the COVID-19 pandemic has increased depression and anxiety in the 18-24 age group.[46]   The August 2020 article suggests high stress in this group stems from "worry about their personal future and worry about the larger future."   The article does not mention masks as a potential cause.

Likewise, Plaintiffs' citations do not support a conclusion that masks cause physical harm.   For example, Plaintiffs cite an article discussing increase in levels of carbon dioxide detected in children for the first 3 minutes of wearing a mask.[47]   Physicians interviewed for the article stated the increase was not physiologically significant, not dangerous, and that it may take a few minutes for kids to acclimate to the mask and breathe normally.   Ironically, one physician quoted in the article stated,

> "the wrong thing to do would be to draw conclusions from this small study that these levels of carbon dioxide are causing trouble.   Before COVID, surgeons would be doing surgeries for 18 hours at a time wearing a mask and had no impairment."[48]

Plaintiffs also cite to a 2005 study and May 2020 study of frontline healthcare workers who reported

---

[44] *See* Plaintiffs' footnote iv.

[45] Fear is surely a reasonable response to a deadly pandemic that has so far affected millions and would likely increase if these mitigation measures were not in place.

[46] *See* Plaintiffs' footnote xiii.

[47] *See* Plaintiffs' footnote v.

[48] *Id.*

discomfort and headaches from wearing masks and multiple layers of PPE for hours on end.[49]  Finally, Plaintiffs cite to several articles written over 10 years ago which discuss how stress affects the body.[50]

## **LEGAL ARGUMENT**

### I.    **PLAINTIFFS DO NOT MEET THE STANDARD FOR INJUNCTIVE RELIEF**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *S. Bay United Pentecostal Church v. Newsom*, __ F.3d __, 2021 WL 222814, at *7 (9th Cir. Jan. 22, 2021); *see Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (a preliminary injunction is an "extraordinary remedy never awarded as of right" (citation omitted)).  To make this showing, Plaintiffs must demonstrate that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *S. Bay United Pentecostal Church*, 2021 WL 222814, at *7 (first alteration supplied).  Plaintiffs have not and cannot meet this standard.

### II.   **PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CLAIMS**

Plaintiffs argue they are entitled to injunctive relief because they have at least "raised serious questions" as to the merits of their federal claims against CCSD.[51]  (Mot., 7:27-28).  What Plaintiffs actually do is toss around legal concepts with no analysis.    Generalized statements of purported violations of Plaintiffs' due process rights under the Fifth, Ninth and Fourteenth Amendments fall well short of what is required.[52]  Plaintiffs must show they are likely to succeed on the merits of a claim

---

[49] *See* Plaintiffs' footnote ix.  Plaintiffs also cite to a September 2020 article that canvassed opinions of students in Belgium where some reported skin issues while wearing a mask. *See* footnote x.

[50] *See* Plaintiffs' footnotes xi, xii, xiv.

[51] The Motion makes no reference to Plaintiffs' state law claims of intentional infliction of emotional distress (Fourth Claim for Relief) and/or negligence claim (Sixth Claim for Relief) asserted in the Complaint as a basis for the requested injunction.  Accordingly, CCSD's Response will not address these claims either.  However, as set forth in CCSD's Motion to Dismiss filed concurrently herewith, Plaintiffs are not likely to succeed on either state law-based claim.

[52] Plaintiffs' federal claims include: 1) violation of the Ninth Amendment right to privacy (Fist Claim for Relief); 2) violation of the privileges and immunities clause of the Fourteenth Amendment (Second Claim for Relief); 3) violation of the Due Process Clause of the Fourteenth Amendment (Third Claim for Relief); and 4) violation of Equal Protection Clause of the Fifth and Fourteenth Amendments (Fifth Claim for Relief).

12

asserted in their Complaint and have failed to do so.   Accordingly, this Response applies the concepts raised by Plaintiffs to their federal claims as pled in the Complaint.

### A.  Mask Wearing is a Safety Measure Related to Public Health.

Attempting to conflate concerns regarding masks with constitutionally protected rights, Plaintiffs argue mask wearing is an important medical decision that parents have the right to make for their children.  (Mot, 16:26-28; 18:13-20).  While individuals generally have the right to make decisions regarding their own medical care and treatment, Plaintiffs' contention that CCSD's school policy equates to medical diagnosis or treatment of any condition is nonsensical.  CCSD is not making medical decisions on behalf of parents, and moreover, the policy at issue provides for accommodations in cases where a student has a medical or developmental condition.[53]  Additionally, families with students enrolled at CCSD had the option at the beginning of the school year to attend school online instead of attending in person and being subject to the CCSD Policy at issue. *See* **Exhibit D, ¶6.** Therefore, Plaintiffs' attempt to suggest that CCSD is taking away a parent's medical decision should be summarily discarded.

Because CCSD's Policy does not involve a medical decision, Plaintiffs' legal authority miss the mark.  Moreover, no case cited to by Plaintiffs considered constitutional rights in the context of school safety measures.  For example, Plaintiffs cite *Mann v. County of San Diego*, No. 16-56657 (9th Cir. 2018) to argue CCSD's Policy interferes with a parents' right to make medical decisions for their children.  (Mot., 16:3-15).  In *Mann*, the Ninth Circuit held that parents' substantive due process rights were violated when a court ordered their children placed in a shelter and physically examined for suspected abuse before the parents provided consent.  *Id.*  Here, CCSD's Policy does not involve any examination or bodily intrusion.  Plaintiffs also cite to *Mueller v. Auker*, 700 F.3d 1180, 1187 (9th Cir. 2012) to argue that only where there is an emergency and to protect the child's health, can the state supplant a parents' rights to make their child's medical decisions. (Mot., 16:16-25).  In *Mueller*, the Court found it did not violate the parents' rights where an abused child was in critical condition in the

---

[53] *See* Policy attached hereto as **Exhibit E; Exhibit D, ¶**10.

*ACTIVE 60556088v1*

1   hospital and a social worker made a medical decision regarding the child's treatment.  Because CCSD

2   is not making any medical decisions on behalf of the child, this case does not apply and CCSD does

3   not need to demonstrate a medical emergency (although arguably the COVID-19 pandemic would

4   qualify).

5         Curiously absent from Plaintiffs' Motion is any mention of the robust legal authority approving

6   vaccine requirements for students across the country.  *See, e.g. Jacobson v. Massachusetts*, 197 U.S.

7   11, 39 (1905)(upholding Massachusetts law that allowed cities to require residents to be vaccinated

8   against smallpox as a legitimate exercise of the state's police power to protect the public health and

9   safety of its citizens); *see Zucht v. King*, 260 U.S. 174 (1922)(parents of a child excluded from school

10   due to her unvaccinated statues unsuccessfully challenged a local ordinance requiring vaccinations for

11   schoolchildren); *see Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015)(rejecting parents'

12   challenge to New York state requirement that all children be vaccinated in order to attend public school

13   notwithstanding the parents' arguments that vaccines cause more harm to society than good);  *see*

14   *Workman v. Mingo County Bd. of Educ.*, 419 F. App'x 348 (4th Cir. 2011)(finding a local school board

15   did not violate due process by failing to admit a student to public school when she did not have the

16   state required immunizations).  Given the ample authority supporting school vaccine requirements,

17   Plaintiffs' arguments regarding CCSD's mask mandate are not sustainable.  Indeed, several courts that

18   have already evaluated the constitutionality of mask requirements have found mask mandates do not

19   violate individual liberties during a public health crisis relying on the foregoing case law. *See In re*

20   *Abbot*, 954 F.3d 772, 784 (5th Cir. 2020); *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020);

21   *Maxwell v. Lee*, 1:20-cv-1093-JDT-jay (W.D. Tenn. Jun. 29, 2020).

22         Moreover, several courts evaluating the constitutionality of vaccine mandates have declined to

23   grant injunctive relief.  For example, in *Whitlow v. California*, 203 F. Supp. 3d 1079, 1081 (S.D. Cal.

24   2016), parents challenged a bill repealing the personal belief exemption to California's immunization

25   requirements for children entering public and private educational and childcare facilities in the State.

26   The parents claimed the new law violated their rights to due process by impinging on fundamental

27   liberties by denying children with personal belief exemptions the opportunity to attend school,

28   stigmatizing those children as "vectors of disease," and violating both parental rights regarding

decision-making concerning their child's health and education and the children's' rights to bodily integrity.  *Id*. at 1089.  The Court found that imposing a mandatory vaccine requirement on school children as a condition of enrollment did not violate substantive due process.  The Court also ruled that "the state's interest in protecting the public health and safety, particularly the health and safety of children, **does not depend on or need to correlate with the existence of a public health emergency**." *Id*. at 1090 (emphasis added).  On those grounds, the Court denied injunctive relief.[54]

> A community has the right to protect itself against an epidemic of disease which threatens the safety of its members" and "it was the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few.

*Whitlow*, 203 F. Supp. at 1083 (citing *Jacobsen*).

Stated simply, if courts do not conclude that vaccine requirements are medical decisions reserved to parents, it is illogical to make such a conclusion here regarding masks.  Therefore, Plaintiffs are unlikely to succeed in arguing that CCSD's Policy is in any way related to a parent's right to make medical decisions for their child or that CCSD's Policy violated such a right.  Based on these theories, Plaintiffs' federal claims are not likely to succeed on the merits.

### B.  Parents do not have a Ninth or Fourteenth Amendment Right to Direct Policy on School Safety.

The Supreme Court has ruled there is a "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000).  However, despite Plaintiffs' argument, these rights do not extend to dictating school policy.  The Ninth Circuit has dismissed parent challenges to public school curriculum and policies that were based on theories like Plaintiffs'.  Those cases clearly state that a parents' constitutional rights related to education are limited to choosing in which school to enroll their child.

---

[54] While Plaintiffs' attorney states in her declaration that "the principles of this case –liberty and security of parents—are completely independent of the notion of COVID-19," that is not supported by case law. (Ex. 1 at ¶21)

For example, Plaintiffs in *Fields v. Palmdale School District*, 427 F.3d 1197 (9th Cir. 2005) challenged conduct authorized by their children's' school allowing a researcher to administer a survey that included questions on sexual topics.   The Plaintiffs claimed these actions violated their fundamental parental rights under the Ninth and Fourteenth Amendments to control the upbringing of their children, including the introduction and flow of sexual information.  *Id*. at 1203.  The Ninth Circuit held that parents' due process or privacy right did not include the right to override the determinations of public school as to the information their children will be exposed to at school.  *Id*. at 1190.  Later, in an amended opinion, the Court extended its ruling further stating, "parents do not have a fundamental due process right generally to direct how a public school teaches their child." *Fields v. Palmdale School District*, 447 F.3d 1187, 1190 (9th Cir. 2006).  In doing so, the Court confirmed the limitation on parental rights applies to school policy generally, not simply challenges related to curriculum.

The Ninth Circuit recently reaffirmed the limitation on parental rights over school decisions. In *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020), the Parent Plaintiffs challenged an Oregon school policy allowing transgender students to use school bathrooms, locker rooms and showers that match their gender identity rather than their biological sex.  *Id*. at 1218.  The school maintained it created the bathroom "student safety plan" for transgender students to ensure that those students could safely participate in school activities.  *Id*.  The Plaintiff parents argued the policy caused their children anxiety and fear of intimate exposure to or by a transgender person; therefore, it violated their parental right to direct the education and upbringing of one's children.  *Id*. at 1217.  The Court dismissed Plaintiffs' action with prejudice, holding that the parents' fundamental right to make care decisions regarding their children did not include the right to determine the bathroom policy of a public school.  *Id*. at 1218.

Although the Ninth Circuit has yet to consider the constitutionality of mask mandates at school, other Courts with similar precedent to the Ninth Circuit have ruled that such mandates do not violate the fundamental rights of parents and therefore dismissed parental challenges.  *See Resurrection Sch. v. Hertel*, No. 20-2256, 2021 WL 3721475, at *17 (6th Cir. Aug 23, 2021)(holding that school mask mandates do not run afoul of the Fourteenth Amendment).  In *Resurrection Sch*., the Plaintiffs alleged

16

that wearing a mask in the classroom interferes with the children's ability to focus and breathe effectively. *Id*. at *1.

Based on the foregoing, Plaintiffs are unlikely to demonstrate that their liberty interest in the care, custody and control of their child extends to school policy. As such, Plaintiffs' federal claims based on such theories are not likely to succeed on the merits and do not support injunctive relief.

### C.  Public Education is Not a Right Granted to Individuals by the Constitution

Plaintiffs contend that CCSD's Policy violates a student's right to be educated in a "normalized" setting. (Mot., 9:11.) It is unclear if Plaintiffs are attempting to make this argument in support of their privileges and immunities claim (Second Claim for Relief) or due process claim (Third Claim for Relief) or another claim asserted. Irrespective, individuals do not have a federal constitutional right to have the State affirmatively provide an education in any particular manner; therefore, Plaintiffs are not likely to prevail on this legal theory either. *See Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 458 (1988)(rejecting the proposition that education is a fundamental right which should trigger strict scrutiny).

The Ninth Circuit recently ruled that students do not have a constitutional right to in-person education. *Brach v. Newsom*, 20-56291 (9th Cir. July 23, 2021). There, the Ninth Circuit upheld a district court ruling which rejected substantive due process claims of Plaintiffs who challenged California's decision to temporarily provide public education in an almost exclusively online format during the COVID-19 pandemic. Likewise, Plaintiffs here do not have a constitutional right to attend school without a mask during a pandemic. Therefore, Plaintiffs federal claims based on a purported constitutional right to normalized education free of masks, is not likely to succeed on the merits and does not support injunctive relief.

### D.  CCSD's Policy is Constitutional because it Satisfies Rational Basis Review.

Although Plaintiffs incorrectly argue CCSD's policy triggers strict scrutiny, the Motion concedes the Policy furthers a compelling interest—to stem the spread of COVID-19. (Mot., 19:23-20:2). Therefore, even if strict scrutiny applied, which it does not, Plaintiffs dispel their own strict scrutiny argument. CCSD's Policy also does not trigger or interfere with Plaintiffs' fundamental rights; therefore, strict or heightened judicial scrutiny does not apply.

Moreover, Plaintiffs cannot demonstrate that CCSD's Policy does not meet rational basis review.  Under these circumstances, the Court evaluates the constitutionality of state actions for a rational basis, upholding the Policy if it is rationally related to a legitimate government purpose.  *See Brach v. Newsom*, 20-56291, at *1 (9th Cir. July 23, 2021).  To defeat rational basis, Plaintiffs must show that CCSD's Policy bears <u>no</u> rational relation to a legitimate state interest.  Since Plaintiffs concede the Policy furthers a compelling interest, the remaining issue is whether it has any rational relation to that interest in mitigating the spread of COVID-19.  This element is easily satisfied.

Legal precedent demonstrates that school mask requirements and other COVID-19 mitigation measures adopted by schools satisfy rational basis review.  *See Brach*, 20-56291, at *1 (finding that restrictions such as refusal to allow in-person public school instruction is rationally related to furthering the legitimate state interest of abating the COVID-19 pandemic); *see School*, 2021 WL 3721475, at *17("requiring masks in school minimizes the spread of COVID-19 and therefore bears some rational relation to the legitimate state interest in controlling the spread of COVID-19").  Here, given the high transmission rates in Clark County, and evidence that masks reduce community spread, there is no question that CCSD's Policy rationally related to the legitimate school interest of reducing transmission and maintaining safe in-person instruction for all students.  Accordingly, Plaintiffs are not likely to succeed in arguing CCSD's policy fails any constitutional test.

### E.  Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits of any Federal Claim.

Instead of addressing the underlying elements required to prove any of Plaintiffs' federal claims asserted in the Complaint and demonstrating a likelihood of success on the same, the Motion identifies broad legal concepts without analysis to argue CCSD's mask mandate should be enjoined.  However, as detailed in CCSD's Motion to dismiss filed concurrently herewith, they do not have a legally cognizable basis to proceed on any of the claims asserted.

First, Plaintiffs are not likely to succeed on claims alleging a violation of the Ninth Amendment right to privacy (First Claim for Relief ) based on the Ninth Circuit's ruling in  *Fields v. Palmdale School District*, 427 F.3d 1197 (9th Cir. 2005), wherein the court held that parents' due process or privacy right did not include the right to override the determinations of public school as to

the information their children will be exposed to at school.  *Id.* at 1190.   As discussed above, given this Circuit's narrow interpretation of privacy rights at school, it would be illogical to find that such rights include freedom from all risk of discomfort from face coverings, especially considering CCSD's Policy is designed to protect the health of <u>all</u> students and staff.

Second, Plaintiffs are not likely to succeed on their claim for relief under the Fourteenth Amendment alleging a violation of the privileges and immunities clause (Second Claim for Relief) as this claim is based on a purported constitutional right to an "unhindered" education free of masks which simply does not exist.   Plaintiffs have not established they have a constitutional right to attend school without a mask during a pandemic.   Moreover, Plaintiffs have not demonstrated that CCSD's Policy actually restricts education in any meaningful way.   Accordingly, Plaintiffs do not have a likelihood of succeeding on such a claim.

Third, Plaintiffs' have not shown a likelihood of success based on the Due Process Clause of the Fourteenth Amendment as set forth in their Third Claim for Relief.   This claim is also premised on a purported violation of parental rights that do not exist.   CCSD's mask mandate does not deprive Plaintiffs of life, liberty, or property.   Additionally, as explained above, "parents do not have a fundamental due process right generally to direct how a public school teaches their child." *Fields v. Palmdale School District*, 447 F.3d 1187, 1190 (9th Cir. 2006).   This has been recognized by other circuits that have already ruled that school mask mandates do not run afoul of the Fourteenth Amendment.[55]

Finally, Plaintiffs are not likely to succeed on their claim alleging a violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments (Fifth Claim for Relief).   Although it is unclear from the Motion if Plaintiffs are seeking injunctive relief based on a perception that they will prevail on such a claim, the case law is not in their favor.[56]   To state a claim against CCSD, Plaintiffs

---

[55] *See Resurrection Sch. v. Hertel*, No. 20-2256, 2021 WL 3721475, at *17 (6th Cir. Aug 23, 2021)(holding that school mask mandates do not run afoul of the Fourteenth Amendment).   Ninth Circuit precedent supports the same.

[56] An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff.   *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986).

ACTIVE 60556088v1

must allege sufficient facts to show that CCSD's Policy treats Plaintiffs differently from other students enrolled within CCSD and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.[57]  Here, CCSD's Policy applies only to students within Clark County School District as it has no authority to dictate rules in other school districts.  Accordingly, Plaintiffs' Fifth Claim for Relief cannot provide a basis for the relief requested.  Moreover, the Ninth Circuit does not recognize the Equal Protection Clause as a means for challenging certain school decisions where those decisions apply equally to all students.  *See, e.g. Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998); *Parents for Privacy*, 949 F.3d at 1217(finding the school's transgender bathroom policy treated all students equally and thus, did not violate the Equal Protection Clause").  Accordingly, Plaintiffs are unlikely to succeed on such a claim.

## III.  PLAINTIFFS FAIL TO DEMONSTRATE THEY WILL SUFFER IRREPARABLE HARM.

Several factors weigh against a finding of irreparable harm.  First, Plaintiffs' delay in bringing and serving the instant Motion undercuts any assertion of urgency or irreparable harm.  *See Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)(finding the delay in seeking relief relevant to the court's consideration of whether to grant an injunction).  EO 47 and CCSD's Policy were announced late July 2021.  Plaintiffs did not serve CCSD with the instant Motion until September 23, 2021, almost 60 days later.[58]  That delay weighs against the issuance of a preliminary injunction in this case.

Second, Plaintiffs' alleged temporary inconveniences associated with wearing a mask do not violate due process and do not rise to the level of irreparable harm.[59]  Indeed, the harms Plaintiffs identify after approximately 30 days of their children wearing masks at school include occasional headaches, a blood blister, anger when being told to wear a mask properly and difficulty hearing

---

[57] *See SeaRiver Mar. Fin. Holdings, Inc., v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002); *see Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

[59] *See* Parent Declarations attached to Plaintiffs' Motion at Ex. 2.  It is reasonable to assume that if masks were causing irreparable harm to their children, Plaintiffs would have requested an accommodation or enrolled their child in virtual school or homeschool.  Instead, the Motion states that the student Plaintiffs are attending in-person school and complying with the school's mask requirements.  (Mot., 20:21-22.)

teachers who wear masks.[60]   Perhaps most perplexing is the contention that "masks create a threatening and unsafe environment for us all…it used to be you couldn't walk into a bank or school with a mask on because the cops would be called…where did this common sense logic go?"[61] The COVID-19 pandemic with disruption of normal activities, and wide-spread illness and death, has been known to present mental health challenges.   But there is no data presented by Plaintiffs to support a conclusion that the current public health measure designed to decrease transmission or risk of disease and allow students to return to in-person learning could be a driver of mental health decline.   Nevertheless, CCSD's policy provides <u>accommodations</u> for students with documented medical and or developmental issues.  Thus, Plaintiffs cannot demonstrate that CCSD's Policy will cause irreparable harm to the health of students.     Moreover, injunctive relief cannot be issued based on a mere possibility of future injury. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.")

Similarly, Plaintiffs cannot demonstrate that perceived health risks or inconvenience violate constitutional rights under these circumstances.  As discussed above in *Parents for Privacy*, the Ninth Circuit considered the constitutionality of a transgender school restroom policy and held it did not violate students' privacy.  949 F.3d at 1223 (finding the potential threat that a student might be seen by someone of the opposite biological sex undressing in a locker room does not give rise to a constitutional violation).  Given this Circuit's narrow interpretation of privacy rights at school, this Court cannot find that such rights include freedom from all risk of discomfort from face coverings. *Id.* at 1225, citing *Caribbean Marine Servs. Co. v. Baldrige* , 844 F.2d 668, 678 (9th Cir. 1988)("in cases in which privacy interests must be weighed against governmental interests, inconvenience and slight discomfort that results from attempting to accommodate both interests are not enough to establish a privacy violation).

---

[60] *See* Branch-Noto Declaration, Plaintiffs' Ex. 2
[61] *See* Paulson Declaration, Plaintiffs' Ex. 2 at ¶10, 11.

*ACTIVE 60556088v1*

Likewise, Plaintiffs cannot show a violation of substantive due process.[62] As a matter of law, Court have found that restrictions designed to save human lives from COVID-19 are not "conscious shocking." *See e.g. Disbar Corp. v. Newsom*, No. 2:20-cv-02473, *5 (E.D. Cal. Dec. 22, 2020) (denying TRO of stay-at-home provisions finding they did not trigger a due process violation because the restrictions were designed to save lives); *see Herrin v. Reeves*, 2020 WL 5748090, at *9 (N.D. Miss. Sept. 25, 2020)(upholding stay-at-home orders and stating "this court finds the notion that restrictions designed to save human lives from COVID-19 are 'conscious shocking' to be absurd and not worthy of serious discussion); *see Parker v. Wolf*, No. 20-CV-1601, 2020 WL 7295831, at *15 (M.D. Pa. Dec. 11, 2020)(finding COVID-19 mask mandate orders to be "at worst, minor and fleeting inconveniences, especially when compared to the widespread infectiousness and death Defendants credibly seek to avoid through these orders").   Accordingly, Plaintiffs are not likely to succeed in demonstrating a constitutional injury.

## IV.    THE BALANCE OF HARDSHIPS WEIGHS IN CCSD'S FAVOR, AS DOES THE PUBLIC INTEREST

Plaintiffs' notion that CCSD implemented its policy "to control Nevada's students and families and wreak havoc on their mental and physical health" is offensive to CCSD's efforts. (Mot. 2:18-20). CCSD's Policy and other similar mandates allow students to safely resume in-person learning.  As demonstrated above, the absence of such measures increases school outbreaks and shutdowns and will ultimately prolong the need for such measures. The public interests weigh in favor of maintaining safe in-person learning for students.

---

[62] "To violate substantive due process, official conduct must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  The "shock-the-conscience" standard sets an extremely high bar, reserved for "only the most egregious official conduct."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (holding conduct shocks the conscience when it is so "brutal" and "offensive" as to not "comport with traditional ideas of fair play and decency").  Examples of qualifying conduct include defendants' shooting a man in the head and killing him, defendants' shooting a man in the head and chest such that they permanently impaired his mental faculties, or defendants' allowing a child to be sexually molested.  *See Porter* 546 F.3d at 1135; *see Ovando v. City of L.A.*, 92 F. Supp. 2d 1011, 1015 (C.D. Cal. 2000); *see Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1013 (D. Ariz. 2009).

*ACTIVE 60556088v1*

1

## **<u>CONCLUSION</u>**

2

Based on the foregoing, this Court should deny Plaintiffs' request for injunctive relief.

3

DATED this 8th day of October 2021.

4

5

**GREENBERG TRAURIG, LLP**

6

By:  */s/ Kara B. Hendricks*

7

Mark E. Ferrario (Bar No. 1625)
Kara B. Hendricks (Bar No. 7743)
Whitney L. Welch-Kirmse (Bar No. 12129)

8

10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135

9

10

*Attorneys for Defendant Clark County School District*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on **October 8, 2021**, I caused a true and correct copy of the foregoing ***CCSD'S Response In Opposition To Plaintiffs' Emergency Motion For Preliminary Injunction [ECF #8]*** to be electronically filed with the Clerk of the Court using the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

/s/ Andrea Lee Rosehill

An employee of GREENBERG TRAURIG, LLP

24