# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Monica Branch-Noto, individually and on
behalf of John Doe Minor No. 1, as guardian
of said minor, et al.,

        Plaintiffs

v.

Stephen F. Sisolak, in his official capacity as
Governor of the State of Nevada, et al.,

        Defendants

Case No.: 2:21-cv-01507-JAD-DJA

**Order Denying Motion
for Preliminary Injunction,
Granting in Part Motions to Dismiss,
and Closing Case**

[ECF Nos. 8, 13, 17, 32]

Two parents of public-school students move for a preliminary injunction against state and school-district COVID-19 mitigation policies that require face coverings for indoor activities during in-person instruction. Citing the Ninth and Fourteenth Amendments, they claim that forcing their children to wear masks to school violates their fundamental right to parent as they see fit and make medical choices for their kids. And adding insult to injury, they were unconstitutionally excluded from "the decision-making medical process" during which the mask policies were adopted. But these perceived wrongs don't violate any constitutional rights. The Constitution does not require an opportunity to participate in the decision-making process for such broadly applicable policies, and the fundamental right to parent does not include the prerogative to dictate school health and safety policies. Because plaintiffs have not established a viable legal basis for their federal claims, I deny their motion for injunctive relief and grant defendants' motions to dismiss them. I then decline to exercise supplemental jurisdiction over the remaining state-law claims and close this case.

**Background**

All Americans are acutely familiar with the COVID-19 pandemic and the myriad ways it's altered our daily lives.  The coronavirus pandemic has raged in waves, ebbing and flowing, and mutating to become more infectious and deadly.[1]  The virus and its many variants have infected one in every six Americans and claimed the lives of 808,000,[2] including more than 8,000 Nevadans.[3]  Clark County, Nevada, has been a "sustained hot spot" for the virus, with high test-positivity and transmission rates.[4]  The Food and Drug Administration (FDA) has fully authorized vaccinations against COVID-19 for those 16 and older and emergency-authorized them for children between the ages of 5 and 15.[5]  To date, 61.5% of Americans and 53% of Clark County residents have been fully vaccinated.[6]

---

[1] *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html (last accessed Dec. 22, 2021); *What You Need to Know About Variants*, CTRS. for DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/about-variants.html (last accessed Dec. 22, 2021) (discussing increased severity of cases caused by the Delta variant and increased transmissibility of the Omicron variant).

[2] *United States COVID-19 Cases, Deaths, and Laboratory Testing (NAATs) by State, Territory, and Jurisdiction*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_deathsper100klast7days (last accessed Dec. 22, 2021).

[3] *Coronavirus (COVID-19) in Nevada*, NEV. HEALTH RESPONSE, https://nvhealthresponse.nv.gov/#covid-data-tracker (last accessed Dec. 22, 2021).

[4] *COVID-19 Community Profile Report*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://healthdata.gov/Health/COVID-19-Community-Profile-Report/gqxm-d9w9 (last accessed Dec. 22, 2021).

[5] *FDA Approves First COVID-19 Vaccine*, FOOD & DRUG ADMIN., https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine age (last accessed Dec. 22, 2021); *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age*, FOOD & DRUG ADMIN., https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age (last accessed Dec. 22, 2021).

[6] *See United States COVID-19 Cases*, *supra* note 2; *Coronavirus (COVID-19) in Nevada*, *supra* note 3.

2

1    In response to the pandemic, governments at all levels have enacted policies to safeguard

2 public health and slow the virus's spread.  Three of those policies—two issued by Nevada

3 Governor Steve Sisolak and one by the Clark County School District (CCSD)[7]—are at issue in

4 this case.  Following repeated guidance from the Centers for Disease Control and Prevention

5 (CDC) that wearing face masks reduces the spread of COVID-19, Governor Sisolak issued

6 Executive Emergency Directives 047 (ED47) and 048 (ED48), requiring all non-exempt

7 individuals, regardless of vaccination status, to wear masks in indoor settings, including public,

8 private, and charter schools.[8]  CCSD then issued a Mask Policy for the 2021–22 school year

9 (CCSD Policy), implementing the CDC's guidance and the Governor's directives and requiring

10 all employees and students to wear masks indoors and on school buses.[9]  Under the CCSD

11 Policy, parents can opt to enroll their children in the district's online, distance-learning program

12 as an alternative to in-person instruction, and students who cannot safely wear a mask may

13 request an accommodation.[10]

14    The plaintiffs are parents of CCSD students.  They sue Governor Sisolak, Nevada

15 Attorney General Aaron Ford, and CCSD,[11] asking this court to award damages; hold ED47,

16

17

_____

18 [7] *Declaration of Emergency Directive 047*, NEV. EXEC. DEP'T,
https://gov.nv.gov/News/Emergency_Orders/2021/2021-07-27_-_COVID-
19 19_Emergency_Declaration_Directive_047/ (last accessed Dec. 22, 2021) [ED47]; *Declaration of Emergency Directive 048*, NEV. EXEC. DEP'T,
20 https://gov.nv.gov/News/Emergency_Orders/2021/2021-08-04_-_COVID-
19_Emergency_Declaration_Directive_048_(Attachments)/ (last accessed Dec. 22, 2021)
21 [ED48]; ECF No. 13-5 (CCSD Policy).

22 [8] *See* ED47, *supra* note 7; *ED48*, *supra* note 7.

[9] *See* ECF No. 13-5.

23 [10] *Id.*

[11] ECF No. 1 at 1.

3

ED48, and the CCSD Policy unconstitutional; and enjoin the policies' enforcement.[12]  Plaintiffs

assert claims under the Ninth Amendment; the Due Process, Privileges or Immunities,[13] and

Equal Protection Clauses of the Fourteenth Amendment; the equal-protection principle of the

Due Process Clause of the Fifth Amendment; and the state-law torts of intentional infliction of

emotional distress (IIED) and negligence.[14]  They contend that the school mask requirements

were enacted without notice and an opportunity to be heard; violate their fundamental right as

parents to make medical decisions for their children; cause physical, mental, and emotional harm

to students;[15] and, by limiting such policies to counties with large populations, impermissibly

discriminate between categories of Nevadans.[16]

Plaintiffs move to preliminarily enjoin enforcement of the school mask requirements and

ask this court to "mandat[e] that [d]efendants immediately allow [p]laintiffs and other members

of the public [to] send their children to school without masks during in[-]person instruction."[17]

They argue that the policies are subject to—and fail—strict scrutiny because they substantially

---

[12] *Id.* at 25–27.

[13] The parties repeatedly mention the "Privileges and Immunities Clause."  *See, e.g.*, ECF No. 1 at ¶ 72; ECF No. 17 at 5.  But the rights and cases they reference arise under the Privileges *or* Immunities Clause of the Fourteenth Amendment, not the Privileges *and* Immunities Clause of Article IV of the federal Constitution.  *See* U.S. CONST. art. IV, § 2, cl. 1; *id.* amend. XIV, § 1, cl. 2.

[14] *Id.* at ¶¶ 62–111.

[15] *Id.* at ¶ 106.  Plaintiffs allege that masks can cause difficulty seeing because glasses can fog up, acne and skin problems, increased carbon dioxide in the blood, exposure to pathogens, anxiety or breathing difficulties, mouth deformities due to mouth-breathing, obstructed emotional connections, and impaired phonetic development.  *Id.*

[16] *Id.* at ¶¶ 62–111.

[17] ECF No. 8 at 23.  Although plaintiffs seek to "[p]ermanently enjoin" the policies' enforcement, *id.*, I construe their motion as one for a preliminary injunction because it seeks immediate, pre-discovery and pre-trial relief.  Regardless, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction . . . ."  *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546, n.12 (1987).

burden a fundamental right and because CCSD did not provide a pre-promulgation hearing.[18]
CCSD and the state defendants move to dismiss the entirety of the complaint.[19]  They contend
that the policies are subject to rational-basis review and easily pass constitutional muster under
each of plaintiffs' federal theories.[20]  CCSD also argues that plaintiffs' federal claims lack a
legitimate constitutional underpinning and that their state-law claims are insufficiently pled.  The
state defendants add that plaintiffs' state-law claims are barred by sovereign immunity.[21]

All motions were given lengthy oral argument.  During that hearing, plaintiffs' counsel
denied the existence of a pandemic,[22] though the World Health Organization, the White House,
and the United States Supreme Court have all consistently acknowledged it.[23]  Counsel also
suggested that a more stringent mask policy—one requiring the universal use of specific N95
masks—would survive constitutional scrutiny, but the current, flexible policy does not.[24]
Despite recognizing that reasonable alternatives to the mask requirements were made available to
plaintiffs, counsel confirmed that they chose to send their children to schools subject to the

---

[18] *Id.* at 19–21.

[19] ECF No. 13 (CCSD's motion to dismiss); ECF No. 17 (state defendants' motion to dismiss).

[20] ECF No. 13 at 16–17; ECF No. 17 at 9–10.

[21] ECF No. 13 at 17–20; ECF No. 17 at 13.

[22] Transcript of Nov. 16, 2021, hearing (Tr.) at p. 14.  As no party has ordered the hearing transcript, it has not been filed on the docket.

[23] *See Global progress against measles threatened amidst COVID-19 pandemic*, WORLD HEALTH ORG., https://www.who.int/news/item/10-11-2021-global-progress-against-measles-threatened-amidst-covid-19-pandemic (last accessed Dec. 22, 2021); *Does 1-3 v. Mills*, 2021 WL 5027177 at *1 (U.S. Oct. 29, 2021) (Gorsuch, J.; Thomas, J.; and Alito, J., dissenting); *Roman Cath. Diocese*, 141 S. Ct. at 67.

[24] Tr. at pp. 10, 12–13.

1  policy and did not seek any accommodations.[25]  And counsel largely conceded that plaintiffs'

2  federal claims are unsupported by any case law.[26]

3                                    **Analysis**

4          A preliminary injunction is an "extraordinary" remedy "never awarded as of right."[27]

5  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain

6  an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they]

7  are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of

8  equities tips in [their] favor, and that an injunction is in the public interest."[28]  The Ninth Circuit

9  recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions

10 going to the merits'—a lesser showing than likelihood of success on the merits—then a

11 preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs'

12 favor,' and the other two *Winter* factors are satisfied."[29]  Under either approach, the starting

13 point is a merits analysis.  Because plaintiffs have satisfied neither approach on the merits of any

14 theory, this extraordinary remedy is not available to them.  And because the complaint lacks any

15 viable legal theory to support a plausible federal claim for relief, this case must be dismissed.[30]

16

17

18
_____

19  [25] Tr. at pp. 26–27.

    [26] *See, e.g.*, Tr. at p. 56.

20  [27] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

21  [28] *Id.* at 20.

    [29] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for

22  the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

23  [30] A properly pled claim must contain enough facts to "state a claim to relief that is plausible on
    its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556
    U.S. 662, 678–79 (2009).

I.      **Plaintiffs cannot succeed on their Fourteenth Amendment substantive-due-process claim.**

"Throughout our history," states "traditionally have had great latitude under their police powers to legislate [for] the protection of the lives, limbs, health, comfort, and quiet" of their citizens.[31]  To this end, "[o]ur Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the [s]tates to guard and protect."[32]  Under this well-established state power, courts have upheld seatbelt[33] and helmet[34] laws, policies requiring patrons to wear shirts[35] and shoes in public facilities,[36] and smoking bans,[37] finding that the liberty interests of the individual must yield to the health and safety interests of the community.

---

[31] *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (cleaned up).

[32] *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief) (cleaned up) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)).

[33] *Burr v. Att'y Gen. Delaware*, 641 F. App'x 194, 196 (3d Cir. 2016) (holding that "the decision to forgo wearing a seatbelt" is not a fundamental right and applying rational-basis standard to Delaware's seatbelt law).

[34] *Picou v. Gillum*, 874 F.2d 1519, 1522 (11th Cir. 1989) (recognizing that "there is a strong tradition in this country of respect for individual autonomy and mistrust of paternalistic legislation" but finding "Florida's helmet requirement a rational exercise of its police powers").

[35] *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992) (upholding library policy requiring patrons to wear shirts).

[36] *Neinast v. Bd. of Trustees of Columbus Metro. Libr.*, 346 F.3d 585, 592 (6th Cir. 2003) (upholding library shoe requirement under rational-basis review).

[37] *See, e.g.*, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1018, 1020 (8th Cir. 2012) (finding no fundamental "right to smoke in public" and upholding a city smoking ban under rational-basis review); *accord Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013).

1

2

**A.    The fundamental right to make parental decisions does not permit parents to reject a public-school mask policy during a pandemic.**

3    This case pits the state responsibility to protect the general welfare against the liberties of

4 individual parents.  Both sides agree that "the right of parents to make decisions concerning the

5 care, custody, and control of their children is a fundamental liberty interest protected by the Due

6 Process clause."[38]  It's the scope of that right that they dispute.  Plaintiffs contend that this

7 substantive-due-process right guarantees them the ability to exempt their children from a school

8 mask requirement during a global pandemic.  And because this right is fundamental, they argue,

9 the mask policy must be evaluated under—and fails—strict scrutiny.[39]

10    To make their claim, however, plaintiffs ignore the narrow scope of this parental interest,

11 starting with the Supreme Court's 1944 recognitions in *Prince v. Massachusetts* that these "rights

12 of parenthood" are not "beyond limitation," and "the state has a wide range of power for limiting

13 parental freedom and authority in things affecting the child's welfare."[40]  Although this right

14 grants parents the freedom to choose whether to send their children to public, private, or home

15 school,[41] it "does not extend beyond the threshold of the school door."[42]  "[O]nce parents make

16 the choice as to which school their children will attend, their fundamental right to control the

17 education of their children is, at the least, substantially diminished."[43]  So parents "do not have a

18

19 [38] *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005).

[39] ECF No. 8 at 18–19.

20 [40] *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944).

21 [41] *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *see also Fields*, 427 F.3d at 1206–07

22 (characterizing the right as one "of parents to be free from state interference with their choice of the educational forum itself, a choice that ordinarily determines the type of education one's child will receive").

23 [42] *Fields*, 427 F.3d at 1207.

[43] *Id*. at 1206.

8

fundamental right generally to direct *how* a public school teaches their child.  Whether it is the school curriculum, the hours of the school day, school discipline, . . . or . . . a dress code, these issues of public education are generally committed to the control of state and local authorities."[44]

Recognizing these parameters, the Ninth Circuit held in *Fields v. Palmdale School District* that parents do not have a fundamental right to limit what public schools tell their children regarding sex education to comport with "their personal and religious values and beliefs."[45]  Further marking the boundaries of parental rights in the public-school setting, the *Fields* Court determined that parents do not have "a right to compel public schools to follow their own idiosyncratic views as to what information the schools may dispense."[46]  It reasoned that "[s]chools cannot be expected to accommodate the personal, moral, or religious concerns of every parent" because "[s]uch an obligation would not only contravene the educational mission of the public schools, but also would be impossible to satisfy."[47]  Fifteen years later in *Parents for Privacy v. Barr*, the Ninth Circuit relied on *Fields* to find no fundamental right of parents to prevent transgender students from sharing school bathrooms and locker rooms with cisgender

---

[44] *Id.* (quoting *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395–96 (6th Cir. 2005), and noting, "[p]erhaps the Sixth Circuit said it best when" so explaining in *Blau*).  These considerations underlie the Supreme Court's holding that drug testing of students in extracurricular activities does not violate due process, *see Bd. of Ed. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822 (2002), and numerous circuit-court rulings that school dress-code policies do not implicate a parent's fundamental rights.  *See, e.g.*, *Blau*, 401 F.3d at 396 (holding that parent "does not have a fundamental right to exempt his child from the school dress code"); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) (reasoning, "[w]hile parents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arents' objection to a public[-]school [u]niform [p]olicy.").

[45] *Fields*, 427 F.3d at 1207–08.

[46] *Id.* at 1206.

[47] *Id.*; *accord Parents for Privacy v. Barr*, 949 F.3d 1210, 1233 (9th Cir. 2020) (noting that such accommodation would be "impossible for public schools[] because different parents would often likely, as in this case, prefer opposite and contradictory outcomes" (cleaned up)).

children.[48]  And just this year in *Brach v. Newsom*, the court rejected claims by the parents of

public-school students that they have a fundamental right to in-person learning that was violated

by the shift to a pandemic-necessitated distance-learning model.[49]  These guiding principles

compel the conclusion that the right to parent as one sees fit does not entitle parents to

undermine local public-health efforts during a global pandemic by refusing to have their children

comply with a school mask requirement, particularly when they've affirmatively chosen that

option over the maskless, distance-learning alternative that CCSD also made available.

## B.   The school mask requirement survives rational-basis review.

Because the right to send a child to public school sans mask is not a fundamental one, the

mask requirement need only be "rationally related to legitimate government interests."[50]  This

conclusion is reinforced by more than a century of vaccine-mandate jurisprudence.  In 1905, the

Supreme Court in *Jacobson v. Commonwealth of Massachusetts* rejected a challenge to a vaccine

mandate on a record in many ways similar to ours.  To combat a smallpox outbreak, the

Commonwealth of Massachusetts imposed criminal penalties on adults who refused a free

vaccination.[51]  Citing his personal views and offering opinions "of those of the medical

profession who attach little or no value to vaccination" to combat disease "or who think that

vaccination causes other diseases of the body," Jacobson argued that the mandate violated his

---

[48] *Parents for Privacy*, 949 F.3d at 1231–33.

[49] *Brach v. Newsom*, 6 F.4th 904, 924 (9th Cir. 2021) (emphasizing that there is no constitutional right to public education, concluding that "[t]he public-school [p]laintiffs have thus failed to show that they have been deprived of a fundamental right that is recognized under the Supreme Court's or this court's caselaw," and finding that California's "refusal to allow in-person public school instruction is rationally related to furthering" the compelling state interest of pandemic abatement).

[50] *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 759 (9th Cir. 2021) (citing *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).

[51] *Jacobson*, 197 U.S. at 12–13.

Fourteenth Amendment liberties.[52]  The High Court rejected his theory and upheld the mandate on a standard akin to rational-basis review.[53]  "Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease [that] threatens the safety of its members," it explained.[54]  The fact that the mode of combatting such a health risk is "distressing, inconvenient, or objectionable to some" does "not permit the interests of the many to be subordinated to the wishes or convenience of the few."[55]  The legislature had to choose between conflicting viewpoints about the best practices for stopping smallpox spread, and "no court . . . is justified in disregarding the action of the legislature simply because in its . . . opinion that particular method was—perhaps, or possibly—not the best either for children or adults."[56]  In reaching that conclusion, the Court cited with approval lower court cases holding that "children may be refused admission to the public schools until they have been vaccinated."[57] *Jacobson* continues to be the cornerstone of decisions upholding vaccine mandates.[58]

---

[52] *Id.* at 30.

[53] *See Roman Cath. Diocese*, 141 S. Ct. at 70 (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational[-]basis review to Henning Jacobson's challenge to a state law that, in light of an ongoing smallpox pandemic, required individuals to take a vaccine, pay a $5 fine, or establish that they qualified for an exemption.").

[54] *Jacobson*, 197 U.S. at 27.

[55] *Id.* at 28–29.

[56] *Id.* at 30–35.

[57] *Id.* at 34 (quoting *Viemester v. White*, 72 N.E. 97, 98 (N.Y. Ct. App. 1904)).

[58] *See, e.g.*, *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Given *Jacobson* . . ., which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2."); *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (citing *Jacobson* for the proposition that there is no constitutional right to a religious exemption from a compulsory vaccination law); *Phillips v. City of New York*, 775 F.3d 538, 542–43 (2d Cir. 2015) ("as *Jacobson* made clear, [whether vaccines cause more harm than good] is a determination for the legislature, not the

Plaintiffs' challenge is no more compelling than Jacobson's was more than a century ago. The United States Supreme Court wrote in *Roman Catholic Diocese of Brooklyn v. Cuomo* that "[s]temming the spread of C[OVID]-19 is unquestionably a compelling interest," and plaintiffs agree.[59]  They contend, however, that the defendants "simply are unable to justify the science behind" a masking policy for schoolchildren as a means to further that interest.[60]  But the law does not require such justification.  The late Justice Antonin Scalia wrote in *Heller v. Doe* that "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."[61]  A restriction passes constitutional muster under this deferential standard "even when there is an imperfect fit between means and ends,"[62] for "the burden is on the one attacking the legislative arrangement to negative every conceivable basis [that] might support it."[63]

Plaintiffs have not met this burden in their attack.  Nor can they.  These policies were adopted based on guidance from the CDC, the American Academy of Pediatrics, and the

---

individual objectors."); *Zucht v. King*, 260 U.S. 174, 176 (1922) ("*Jacobson* . . . settled that it is within the police power of a state to provide for compulsory vaccination.").

[59] ECF No. 8 at 19 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, __ U.S. __, 141 S. Ct. 63, 67 (2020) (per curiam)).  Earlier this month, the Ninth Circuit noted in *Doe v. San Diego Unified Sch. Dist.*, __ F.4th __, 2021 WL 5757397, *6 (Dec. 4, 2021), that "The COVID-19 pandemic has claimed the lives of over three quarters of a million Americans," in support of its conclusion that "the public interest weigh[ed] strongly in favor of denying" a motion to enjoin a California school district's vaccine mandate.

[60] *Id*. at 12.

[61] *Heller v. Doe,* 509 U.S. 312, 320–21 (quoting *FCC v. Beach Communications, Inc*., 508 U.S. 307, 313 (1993)).

[62] *Id*. at 321.

[63] *Id*. at 320 (cleaned up) (quoting *Lehnhausen v. Lake Shore Auto Parts Co*., 410 U.S. 356, 364 (1973)).

Southern Nevada Health District.[64]  There is overwhelming, recent evidence that mask-wearing in public schools reduces the spread of COVID-19.  For example, an Arizona State University study found that schools without mask requirements were 350% more likely to have a COVID-19 outbreak.[65]  The CDC also conducted a study of more than 500 counties with and without school-mask requirements.  It found that those counties without such requirements faced more than double the rate of new pediatric COVID-19 cases per day than those with them.[66]

For their part, the plaintiff-parents offer their personal declarations that "[t]here is no scientific evidence that masks work to stop the transmission of the C[OVID-19] virus and if anything, because we keep touching our masks, we are probably spreading more germs around" and causing children "negative physical and phycological [sic] impact[s]."[67]  They cite the opinion of a freelance writer in Utah that wearing masks at school does more harm than good for kids' mental health.[68]  They also point to an article reporting an increase in carbon dioxide levels

---

[64] ECF No. 15-5 at ¶ 5 (decl. of Monica Cortez).

[65] Megan Jehn, et al., *Association Between K–12 School Mask Policies and School-Associated COVID-19 Outbreaks—Maricopa and Pima Counties, Arizona, July–August 2021*, MORBIDITY & MORTALITY WKLY. REP. 2021 (Oct. 1, 2021), http://dx.doi.org/10.15585/mmwr.mm7039e1 (last accessed Dec. 22, 2021), cited at ECF No. 15 at 9 n.38.

[66] Samantha E. Budzyn, et al., *Pediatric COVID-19 Cases in Counties With and Without School Mask Requirements — United States, July 1–September 4, 2021*, MORBIDITY & MORTALITY WKLY. REP. 2021 (Oct. 1, 2021), http://dx.doi.org/10.15585/mmwr.mm7039e3 (last accessed Dec. 22, 2021) ("The average change . . . for counties with school mask requirements (16.32 cases per 100,000 children . . . ) was 18.53 cases per 100,000 per day lower than the average change for counties without school mask requirements (34.85 per 100,000 per day) . . . ."), cited at ECF No. 15 at 9 n.38.

[67] ECF No. 8-1 at 2 (decl. of Monica Branch Noto); *id.* at 13 (decl. of Tiffany Paulson).

[68] *Id.* at 37 n.iv (citing Autumn Foster Cook, *Opinion: Requiring Kids to Wear Masks All Day at School Does More Harm Than Good*, DESERET NEWS (Aug. 13, 2021), https://www.deseret.com/opinion/2021/8/13/22623659/requiring-kids-to-wear-masks-all-day-at-school-does-more-harm-than-good-utah (last accessed Dec. 22, 2021)).

in children wearing masks.[69]  But that article concludes with the opinions of doctors who note that this $CO_2$ "increase is not physiologically significant" nor "more important than the amount of safety that one gets from wearing a mask."[70]

Regardless of the relative strength of the parties' mask-efficacy views, it is well settled that the choice between these opposing theories rests soundly in the prerogative of the policymakers, not the courts.[71]  As Chief Justice John Roberts cautioned earlier this year in *South Bay United Pentecostal Church v. Newsom*, when "officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad," and "they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people."[72]  Because it cannot be said that the masking policies are not rationally related to the legitimate government interest of slowing the spread of COVID-19, the parental-rights claim is without merit.[73]  Plaintiffs' request for injunctive relief based on a substantive-due-process violation is denied, and the claim is dismissed under Federal Rule of Civil Procedure 12(b)(6).

---

[69] *Id.* at 37 n.v (citing Luz Pena, *JAMA study suggests children are breathing CO2 when wearing masks, experts say levels are not dangerous*, ABC 7 NEWS (July 6, 2021), https://abc7news.com/jama-masks-children-and-co2-pediatrics-face-mask-study/10866564/ (last accessed Dec. 22, 2021)).

[70] *Id.*

[71] *Jacobson*, 197 U.S. at 30.

[72] *S. Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief) (cleaned up) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).  This is particularly true for school policies, as courts must "start from the premise that courts must be wary of 'judicial interposition in the operation of the public school system of the Nation.'" *Fields*, 427 F.3d at 1208 (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975)).  Plus, "[t]he state's authority over children's activities is broader than over like actions of adults." *Prince*, 321 U.S. at 168.

[73] This conclusion is consistent with those of the overwhelming majority of other courts that have addressed the issue.  *See, e.g.*, *Resurrection Sch. v. Hertel*, 11 F.4th 437 (6th Cir. 2021); *Lloyd v. Sch. Bd. of Palm Beach Cnty*, 2021 WL 5353879, at *16 (S.D. Fla. Oct. 29, 2021); *Doe*

**II.     Plaintiffs cannot succeed on their procedural-due-process claim.**

Nor can plaintiffs meet the merits factor for injunctive relief based on a procedural-due-process claim.  Plaintiffs theorize that their exclusion from the decision-making process that led to the adoption of the mask policies[74] violated their procedural-due-process rights.  As authority for this notion, they cite cases holding that "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies" and recognizing a violation of that right when a child is removed from a parent's custody without a warrant or "imminent danger of serious bodily injury."[75]  Because there is no such emergency here, they reason, CCSD violated this procedural-due-process right by "making determinations as to the health and wellbeing of students[] without parent participation . . . ."[76]

But cases that establish procedural guarantees for "intruding on a parent's custody of her child"[77] have no application to these facts.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[78]  And the child-removal cases found parental-rights violations because separating a child from a parent infringes upon the "well-established" "constitutional right of

---

*v. Franklin Square Union Free Sch. Dist.*, 2021 WL 4957893 (E.D.N.Y. Oct. 26, 2021); *Oberheim v. Bason*, __ F. Supp.3d __, 2021 WL 4478333 (M.D. Penn. Sept. 30, 2021); *Guilfoyle v. Beutner*, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021); *P.M. v. Mayfield City Sch. Dist. Bd. of Educ.*, 2021 WL 4148719 (N.D. Ohio Sept. 13, 3021); *W.S. by Sonderman v. Ragsdale*, __ F. Supp. 3d __, 2021 WL 2024687 (N.D. Ga. May 12, 2021).

[74] *See, e.g.*, ECF No. 8 at 8; ECF No. 18 at 4.

[75] ECF No. 18 at 5 (quoting *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)).

[76] *Id.*

[77] *Mabe*, 237 F.3d at 1106.

[78] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

15

parents and children to live together without governmental interference."[79]  Plaintiffs' counsel

conceded at oral argument that the mask policies do not come close to the parent-child separation

scenarios found to violate this narrow right.[80]  So plaintiffs have not identified a protected liberty

or property interest implicated by the policies.

The reach of the mask requirements also dooms this claim.  The Ninth Circuit has long

recognized that "constitutional procedural due process requirements of individual notice and

hearing" do not apply to governmental decisions that "affect large areas" rather than "one or a

few individuals"; "general notice as provided by law is sufficient."[81]  CCSD's mask policy and

the Governor's emergency directives that it followed target large areas and broad populations

and are not directed at individuals.[82]  Plaintiffs do not allege, do not argue, and do not

demonstrate that these policies were adopted in violation of state or district protocol.  So they are

not entitled to injunctive relief based on a procedural-due-process theory.  And because there

exists no plausible legal theory for this claim, I dismiss it as well.

---

[79] *Id.*

[80] Tr. at p. 34, l. 2–4 ("there is no precedent at this time that plaintiffs can rely on that would even come close to anything other than these extreme cases.").  Counsel also theorized that a mask requirement is a medical decision "no different than distributing condoms in school."  Tr. at p. 19.  But the only circuit to have addressed a procedural-due-process challenge to a school condom-distribution program found that such a policy did not violate the parents' rights to make decisions about their children.  *See Parents United For Better Sch., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 148 F.3d 260, 277 (3d Cir. 1998) (holding that condom program "did not offend parental rights regarding the custody and care of their children").

[81] *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994).  *See also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

[82] CCSD contains more than 300,000 students and nearly 375 schools.  *See Overview of Clark County School District*, U.S. NEWS, https://www.usnews.com/education/k12/nevada/districts/clark-county-school-district-100452 (last accessed Dec. 22, 2021).

16

**III.    The Ninth Amendment does not provide a viable legal theory for enjoining the mask requirements.**

The notion that the Ninth Amendment supplies a basis to enjoin a school mask mandate deserves only short shrift.  As the Ninth Circuit explained in *Strandberg v. City of Helena*, although the Ninth Amendment was referenced in some of the privacy cases[83] as a provision that protects unenumerated rights, it "has never been recognized as independently securing any constitutional right[] for purposes of pursuing a civil rights claim."[84]  Plaintiffs' counsel even conceded at oral argument that the Ninth Amendment "does not provide [plaintiffs] with a specific right."[85]  Because a likelihood of success on the merits or substantial question about the merits requires, at bottom, a viable legal theory, and the Ninth Amendment cannot supply one, plaintiffs have not shown that they are entitled to injunctive relief based on their Ninth Amendment claim either.  For the same reason, I dismiss it for failure to state a claim.

**IV.    Plaintiffs' remaining claims are implausible.**

Having dispensed with all of plaintiffs' arguments in favor of enjoining the mask requirements and dismissed the associated claims, I now turn to the claims not raised as bases for their preliminary-injunction motion.  The remaining federal claims too fail to state a claim upon which relief can be granted.  And with no viable federal claim left, I decline to exercise supplemental jurisdiction over the state-law claims, so I dismiss the entire complaint.

---

[83] *See Roe v. Wade*, 410 U.S. 113, 152 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 490 (Goldberg, J., concurring).

[84] *Strandberg v. City of Helena*, 791 F.2d 744, 748 (1986).

[85] Tr. at p. 58.

1

2

### A.    Plaintiffs cannot state an equal-protection claim under the Fifth or Fourteenth Amendments.

3      The Equal Protection Clause proscribes states from "deny[ing] to any person within its

4   jurisdiction the equal protection of the laws."[86]  Strict scrutiny applies to any state law or

5   regulation that differently "classifies by race, alienage, or national origin" or significantly

6   burdens a class's exercise of a fundamental right, such as the right to interstate travel.[87]  If strict

7   scrutiny doesn't apply, rational-basis review does.[88]

8      Plaintiffs' equal-protection claim—ostensibly a facial and as-applied challenge to all

9   three mask requirements at issue here—only alleges facts targeting ED48.[89]  They contend that

10  ED48 is subject to strict scrutiny because "[d]efendants have intentionally and arbitrarily" made

11  "those [c]ounties whose populations exceed 100,000.00 people" subject to ED48 "regardless of

12  empirical data as to the spread of the virus, . . . preposterously propos[ing] that the virus spreads

13

14  [86] U.S. CONST. amend. XIV, § 1, cl. 1.  While the Fifth Amendment, unlike the Fourteenth Amendment, "contains no equal[-]protection clause and . . . provides no guaranty against

15  discriminatory legislation by Congress," *Detroit Bank v. United States*, 317 U.S. 329, 337 (1943), "equal[-]protection analysis in the Fifth Amendment area is the same as that under the

16  Fourteenth Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).  The Supreme Court has held that given its "decision [in the companion case, *Brown v. Board of Educ. of Topeka*,] that the

17  Constitution prohibits the states from [racial discrimination], it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government."  *Bolling v. Sharpe*,

18  347 U.S. 497, 500 (1954).  But because plaintiffs here sue state actors and do not challenge federal law, only the Fourteenth Amendment applies to their claim.

19  [87] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Graham v. Richardson*,

20  403 U.S. 365, 375 (1971).

21  [88] *City of Cleburne*, 473 U.S. at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate

22  state interest." (citations omitted)); *Gregory v. Ashcroft*, 501 U.S. 452, 470–71 (1991) ("In cases where a classification burdens neither a suspect group nor a fundamental interest, courts are quite

23  reluctant to overturn governmental action on the ground that it denies equal protection of the laws." (cleaned up)).

[89] ECF No. 1 at ¶¶ 94–103.

18

among school children in counties over 100,000 residents, while do not [sic] in counties with smaller populations."[90]  Thus, it appears that plaintiffs' demand for strict scrutiny rests on ED48's disparate treatment of counties by population.

But century-old Supreme Court precedent forecloses that argument,[91] so ED48 need only survive rational-basis review.  That standard requires plaintiffs to negate "every conceivable basis which might support" the policy they challenge; defendants don't have to present reasons to sustain its rationality.[92]  Nevertheless, the state defendants present two such reasons—the higher likelihood of COVID-19 outbreaks in larger school districts and those districts' increased ability to implement mask requirements[93]—neither of which plaintiffs attempt to refute.[94] Because ED48 easily passes constitutional muster, I dismiss plaintiffs' equal-protection claim.

### B.  Plaintiffs cannot state a claim under the Privileges or Immunities Clause of the Fourteenth Amendment.

The Privileges or Immunities Clause of the Fourteenth Amendment prevents states from abridging rights uniquely "arising out of the nature and essential character of the national

---

[90] *Id.* at ¶¶ 97–98.  To the extent plaintiffs' argument for heightened scrutiny relies on the alleged "impinge[ment] o[f] a fundamental right—the right to free exercise, including the right to due process and the right to travel (both interstate and intrastate), the right to privacy, among others," they allege no facts relevant to those rights to sustain their equal-protection claim.  In addition, neither the Supreme Court nor the Ninth Circuit has recognized a fundamental right to *intra*state travel.  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997).

[91] *Ft. Smith Light & Traction Co. v. Bd. of Improvement of Paving Dist. No. 16 of City of Ft. Smith, Ark.*, 274 U.S. 387, 391 (1927) ("The Fourteenth Amendment does not prohibit legislation merely because it is . . . limited in its application to a particular geographical or political subdivision of the state."); *see also Ocampo v. United States*, 234 U.S. 91, 98–99 (1914); *Missouri v. Lewis*, 101 U.S. 22, 30 (1879).

[92] *See supra* at p. 12 (quoting *Heller*, 509 U.S. at 320).

[93] ECF No. 17 at 18–20.

[94] ECF No. 20 at 19.

government, and granted or secured by the Constitution of the United States."[95]  The Supreme

Court has recognized only a handful of rights under the clause, such as the rights to take up

residency in another state or own land.[96]  Plaintiffs appear to argue that the mask requirements

impinge their children's purported right to "attend[] school unhindered," thereby violating the

clause's protections, especially since "34 [s]tates in the [c]ountry have suspended" mask

requirements.[97]  But nowhere do they establish that the right to attend school unhindered by a

face mask is one unique to national citizenship or that the constitution guarantees such a right.

Nor do they argue that 34 states ending a practice creates a national-citizenship-based right to

end that practice in every other state.  And plaintiffs' counsel admitted at oral argument that

"[t]here is absolutely no precedent currently in any circuit" that could support their Privileges or

Immunities Clause theory.[98]  Because no law supports this claim, I grant the defendants' motion

and dismiss it.

## V.   The court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims.

With all of plaintiffs' federal claims dismissed, I turn to their state-law negligence and

IIED claims.  Federal courts are courts of limited jurisdiction, and they may exercise

supplemental jurisdiction over state-law claims that "are so related to claims in the action" that

---

[95] *Maxwell v. Dow*, 176 U.S. 581, 593 (1900), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970) (citing *United States v. Cruikshank*, 92 U.S. 542 (1875); *Slaughter-House Cases*, 83 U.S. 36 (1872)); *see also* U.S. CONST. amend. XIV, § 1, cl. 2.

[96] *See generally Saenz v. Roe*, 526 U.S. 489 (1999); *Oyama v. California*, 332 U.S. 633 (1948).

[97] ECF No. 1 at ¶ 70; ECF No. 20 at 20.  At oral argument, plaintiffs' counsel claimed that the number of states without mask requirements had risen to 42 but provided no evidence to support that assertion.  Tr. at p. 8.

[98] Tr. at p. 56, l. 1–4.

they form the same case or controversy" with the claims over which the court has jurisdiction.[99]

Once a plaintiff's federal claims are gone, the court may decline to exercise supplemental

jurisdiction over remaining state-law claims.[100]  Because I have dismissed plaintiffs' § 1983

claims on which federal jurisdiction is based here,[101] I decline to continue to exercise

supplemental jurisdiction over their remaining state-law claims and dismiss them without

prejudice to plaintiffs' ability to refile them in state court.[102]

## Conclusion

IT IS THEREFORE ORDERED that plaintiffs' motion for preliminary injunction **[ECF No. 8] is DENIED**.

IT IS FURTHER ORDERED that defendants' motions to dismiss for failure to state a claim **[ECF Nos. 13, 17] are GRANTED in part**.  Plaintiffs' federal claims are **DISMISSED with prejudice** because amendment would be futile.  And because I decline to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims, IT IS FURTHER ORDERED that those claims are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3). Defendants' motions to dismiss those claims are thus DENIED as moot.

---

[99] 28 U.S.C. § 1367(a).

[100] *Id.* at § 1367(c)(3); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court.").

[101] I note that all of plaintiffs' federal claims fail for lack of a viable legal theory.  And although district courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), I find that amendment would be futile, so leave is not warranted here.

[102] Because I dismiss plaintiffs' claims under § 1367, I need not and do not reach the state defendants' Eleventh Amendment sovereign-immunity argument.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to **CLOSE THIS CASE**, so CCSD's motion to consolidate other mask-policy cases into this one **[ECF No. 32] is DENIED as moot**.

_____
U.S. District Judge Jennifer A. Dorsey
December 22, 2021