**RESP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Ave.
Reno, Nevada 89509
Tel: (775) 284-7000
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MONICA BRANCH-NOTO, individually and on behalf of JOHN DOE MINOR *NO. 1*, as guardian of said minor, TIFFANY PAULSON, individually and on behalf of JOHN DOE MINOR *NO. 2* and JANE DOE MINOR *NO. 1*, as guardian of said minors,

        Plaintiffs,

vs.

STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as the Attorney General of the State of Nevada, CLARK COUNTY SCHOOL DISTRICT, a public entity, DOES 1 through 100.

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 2:21-cv-01507 JAD-DJA**

**PLAINTIFFS' RESPONSE TO DEFENDANT CCSD'S MOTION FOR ATTORNEYS FESS**

## PLAINTIFFS' RESPONSE TO DEFENDANTS' CLARK COUNTY SCHOOL DISTRICT'S MOTION FOR ATTORNEYS' FEES

COMES NOW, Plaintiff MONICA BRANCH-NOTO ET AL, by and through the undersigned attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP, who hereby submit the following RESPONSE TO DEFENDANT CLARK COUNTY SCHOOL DISTRICT'S MOTION FOR ATTORNEYS' FEES .

### INTRODUCTION

The litigation *sub judice*, involves Plaintiffs who are parents of minors attending Clark County School District, requiring a mask mandate pursuant to Nevada's Governor's Executive Order 0048, entered on August 4, 2021, in violation of Plaintiffs' procedural and substantive due process rights and various other claims for relief.

### STATEMENT OF FACTS

Plaintiffs Monica Branch Noto and Tiffany Paulson brought this action against Clark County School District and the State of Nevada following the State's issuance of Emergency Directive 48, creating a mask mandate in all Clark County School District Schools. This mandate was not subject to any public hearings on medical evidence as to the efficacy of masks or adverse effects on schoolchildren and consequently a public outcry began as early as August 11, 2021, with parents protesting their children being masked during school hours. [1] On August 12, 2021, parents appeared at the Clark County School Board meeting demanding their voices be heard regarding the mask mandates and were met with failure and this lawsuit ensued.

Plaintiffs brought this action following a systematic policy by Defendants of ignoring parents' opinions, their ability to share expert evidence as to efficacy of masks, adverse effects of same, and essentially stifling any dissent by parents on the matter. Plaintiffs' Complaint and

---

[1] See News Articles attached hereto as *Exhibit "1"* to Plaintiffs' Appendix to Response.

Motion for Preliminary Injunction sought to enjoin the mandate from being enforced until parents were afforded procedural due process of participating in the decision-making process of the mask mandates.

This Court found that "The Constitution does not require an opportunity to participate in the decision-making process for such broadly applicable policies, and the fundamental right to parent does not include the prerogative to dictate school health and safety policies."[2] Plaintiffs' Complaint was dismissed the Motions for Preliminary Injunction was denied.

## **LEGAL ARGUMENT**

The general rule in our legal system is that each party must pay its own attorney's fees *Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010) (citation omitted).* But many federal statutes protecting civil rights, including the ADA, 42 U.S.C. §1983, contain fee-shifting provisions that allow a "prevailing party" to recover "a reasonable attorney's fee. *Id.*

When the Defendant is a prevailing party in a 1983 action, it is Defendants' burden to demonstrate that they are entitled to attorneys' fees upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, *Christiansburg Garment Co. V. EEOC 434 U.S. 412, 421 (1978). See infra.*

It is also Defendants' burden to provide the Court a proper analysis under the Lodestar method, along with a justification for seeking alternate Counsel when the Office of General Counsel for the Clark County School District is the agency that is utilized for legal representation of Clark County School District. The use of the Office of General Counsel would have saved the school district the $57,503.00 dollars it is now seeking to recovery from Plaintiffs. Put simply, had Clark County School District would have used the Office of General

---

[2] *See ECF 38 pg. 1*

Counsel to defend this matter, Clark County School District would not have incurred legal fees at all. *See infra.*

A.    **DEFENDANT'S MOTION FOR ATTORNEY'S FEES FAILS TO PROVIDE THIS COURT WITH ANY JUSTIFICATION WHY DEFENDANTS WERE REPRESENTED BY PRIVATE COUNSEL AND NOT PUBLIC SECTOR ATTORNEYS TO CHALLENGE THIS EXECUTIVE ORDER**

Defendants had two options for representation of defending this action challenging the Emergency Executive Order. The first was the Attorney General's Office and the Second was the Clark County School District's Office of General Counsel.

NRS 228.110   Legal adviser on state matters arising in Executive Department; limitation on employment of private attorney by Executive Department; claims in violation void.

1.   Except as otherwise provided in NRS 228.111 to 228.1118, inclusive, or by specific statute:

(a)  The Attorney General and the duly appointed deputies of the Attorney General shall be the legal advisers ***on all state matters arising in the Executive Department of the State Government.***
(b)  No officer, commissioner or appointee of the Executive Department of the Government of the State of Nevada shall employ any attorney at law or counselor at law to represent the State of Nevada within the State, or to be compensated by state funds, directly or indirectly, as an attorney acting within the State for the State of Nevada or any agency in the Executive Department thereof unless the Attorney General and the deputies of the Attorney General are disqualified to act in such matter.

Plaintiffs Complaint specifically questions the validity and constitutionality of Executive Directive 048, and requested that ALL Defendants be enjoined from the enforcement thereof.

The executive directive is a State Matter arising out of the Executive Department of the State Government, and accordingly should have been represented by the Attorney Generals office under NRS 228.110 unless the Attorney Generals office was disqualified from representing the District in said matter.

Even assuming *arguendo* that the Attorney General's office was not to represent Clark County School District, despite the litigation being about an Executive Directive under scrutiny, Defendants could have utilized their Office of General Counsel to litigate this matter in a more fiscally responsible manner, instead of retaining outside counsel to do the same.

The Office of General Counsel represents Clark County School District in litigation and has represented them in all jurisdictions, from actions in State of Nevada District Courts, Nevada Supreme Court, the United States District Courts, Ninth Circuit Court of Appeals, and Supreme Court of the United States.[3]

Defendants' request of attorney's fees includes that CCSD's budget should not be taxed with the burden of defending unsupported claims. *See Defendants' Motion pg. 5 lns.26-27.* Specifically, it is the job of the office of General Counsel to engage in litigation on behalf of Clark County School District as stated in the job description of Clark County School District's Office of General Counsel:

> Supervise all aspects of litigation in which the District is named as plaintiff or defendant. These duties include, but are not limited to, the preparation of all pleadings, trial, and appellate briefs; negotiation between parties including certain settlements; the conduct of trial and hearings at the level of original jurisdiction or on appeal; and all other court or hearing appearances in order to represent the interests of the District

Further a description of the Office of General Counsel – Legal Office of the General Counsel, Cost Center Group 003, "provides advice and representation on all legal matters in both State and federal courts, and before a variety of administrative agencies involving alleged civil rights violations, workers' compensation claims and appeals, unemployment hearings, disputes before Nevada's Employee-Management Relations Board, and administrative arbitrations with

---

[3] See *Exhibit "2"* of Appendix to this Motion with appearances of the Office of General Counsel in the following cases: 1) CCSD v ESEA, NSC 73348; 2) Quintana v CCSD, 2:21-cv-00023-GMN-NJK; 3) Napoles Et al v CCSD, 2:19-cv-01474-APG-BNW;4)Nielsen v CCSD, 2:21-cv-00727-RFb-DJA; 5) Amanda J v CCSD 2:98-cv-01076; 6)Henderson v CCSD 2:19-cv-01631; 7) Serrano v CCSD, NSC 76976.

the various labor organizations which represent District employees. Additionally, the Office

provides advice and counsel to staff and administration on a broad variety of issues faced daily

by schools and the central office. When demands for legal services exceed in-house capability,

the Office contracts for additional legal services. Purchased services expenditures reflect those

amounts reserved for contracted litigation support when it is impractical for in house counsel to

provide representation". [4]

In fact, it would have likely been more reasonable that the Office of General Counsel for

Clark County School District, would have been more familiar with the District's policies. For

example, in *2:17-cv-01541-RFB-NJK Rogich et al v. Clark County School District*, the District

utilized the Office of General Counsel to litigate this very specific District Policy. [5] Yet there has

been no justification by Defendants why the Office of General Counsel declined the

representation in this matter requiring the County to hire private Counsel to litigate same.

In fact, when it comes to Executive actions, Nevada's legislators had the foresight to

ensure that enforcement of state law remains the providence of public officials. Longstanding

Nevada law unambiguously prohibits the State from hiring outside counsel absent a conflict of

interest that precludes the state from using its own lawyers or specific authorization from the

legislature. See NRS § 228.110(2). This statute is intended to avoid precisely the sort of serious

concerns that are implicated when state power is delegated to private individuals with profit

motivations.

Accordingly, it was unnecessary for Defendants to engage in Counsel from the private

sector where adequate and competent resources were readily available to the School District to

defend this matter. Notwithstanding same, Defendants Motion is void of any justification as to

---

[4]  departmental-budgets.pdf (ccsd.net)
[5] Note Office of General Counsel, Phoebe V. Redmond, Esq., engaged as recently as January 4, 2022, to litigate the matter of *Rogich et al v. Clark County School District*

why the Office of General Counsel was not utilized for this action, without incurring legal fees, when it clearly engages in defending the School District as opposed to hiring private sector counsel to defend the matter and expend $57,000.00 in legal fees.

**B.  DEFENDANTS FAIL TO DEMONSTRATE THAT PLAINTIFFS' ACTION WAS FRIVOLOUS, UNREASONABLE OR WITHOUT FOUNDATION.**

Under 42 U.S.C. § 1988, a prevailing party in a proceeding brought under 42 U.S.C. § 1983 may move for an award of reasonable attorney's fees. 42 U.S.C. § 1988. Where the prevailing party is ***the defendant***, the district court may exercise its discretion to award such fees "upon a finding that the plaintiff's action was ***frivolous, unreasonable, or without foundation***, even though it was not brought in subjective bad faith." *Christiansburg Garment Co. V. EEOC 434 U.S. 412, 421 (1978) (Title VII), made applicable to §1988 fees in Hughes v. Rowe 449 U.S. 5, 14-15 (1980). See also, Hensley, 461 U.S. at 429 n.2 (1983); Rounseville v. Zahl, 13 F.3d 625 (2nd Cir. 1994). See also  Fabbrini v. City of Dunsmuir, 631 F.3d 1299, 1302 (9th Cir. 2011); Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 962 (9th Cir. 2010); Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 852 (9th Cir. 2007). "*

A case may be deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.'" *Karam v. City of Burbank, 352 F.3d 1188, 1195 (9th Cir. 2003); see also Galen v. Cnty. of L.A., 477 F.3d 652, 666 (9th Cir. 2007).* An unsuccessful § 1983 claim is without merit only if it is "groundless or without foundation." *Gibson v. Office of Atty. Gen., State of Cal., 561 F.3d 920, 929 (9th Cir. 2009).*

Here, at the outset, Plaintiffs brought this case after a finding that 34 States across the Nation do not have mask mandates for schools. As of the date of the hearing on November 15, 2021, that number of states without mandates ballooned to 42 States not having mask mandates for schools. As of the date of this Response, 43 states do not have mask mandates. Therefore,

Plaintiffs' attempts to have Nevada follow 43 out of 50 States in the United States, and eliminate mask mandates in schools in Nevada, rests on persuasive authority that perhaps the mask mandates issued via Emergency Directive 0048 in Nevada should be enjoined.

Defendants present a litany of examples in their Motion for Attorneys fees to demonstrate that Plaintiffs' claims were frivolous and lacked merit, citing to examples of vaccines, seatbelts, shirts or shoes. *See Defendants' Motion pg 6 lns. 22-24.* The lack of adverse effects to any of these "safety measures" was never discussed or questioned, while Plaintiffs' presented one whole page of adverse effects of students wearing masks for 8 hours a day.

Defendants further mislead this Court that Plaintiffs claimed that no emergency existed to justify the mandates.  In fact, Plaintiffs' Motion for Preliminary Injunction, *pg. 8 lns. 13-15*, specifically state "[A]t the outset, there is ***no emergency situation*** which justifies the denial of ***parents' ability to participate*** in the decisions regarding the mask mandates prior to the issuance of same.".  Neither did Defendants present any evidence of reasoning why parents would not be allowed to participate in public discourse regarding mask mandates, just as easily as they participated in public School District Board of Trustee's hearings regarding vaccination mandates prior to any decision be made regarding same.

In fact, the ability of parents to participate in the public discourse regarding school policies and mandates is a clear indication that due process has historically been afforded parents through publicly noticed School Board hearings and testimony on the subjects. The Board of Trustees of Clark County School District recognizes this on its own, as the first statement on their website couldn't be more simplified "The Board of School Trustees recognizes that its deliberative process benefits greatly from public input and perspective."[6] Furthermore, the third

---

[6]  Trustees General Information | Clark County School District (ccsd.net)

request of Plaintiffs' Motion for Preliminary Injunction was a request by this Court to enjoin enforcement of the mask mandate until parents had been afforded procedural due process in participating in the decision making process on the mask mandates.

All Plaintiffs sought was for this Court to enjoin the mandates until they were given the opportunity to participate publicly and voice opinions and concerns regarding masks, medical opinions and adverse effects of same, as they have in the past with the School District. This Court sided with Defendants and reiterated that parents, specifically Plaintiffs, have no rights (substantive ***or procedural***) to engage in any public discourse regarding mask mandates and no constitutional rights afford Plaintiffs'.

This Court and Defendants further reiterate that there is no precedent allowing Plaintiffs to substantiate claims under the Ninth or Fourteenth Amendment. While, there is certainly no ***legal precedent*** to this type of challenge, when 42 States do not have mask mandates, such precedent would presumably come from the remaining 8 states, the most compelling justification is two-fold; 1) 42 States do not have mask mandates; and 2) Open Meeting Laws in Nevada have afforded parents the ability to participate in policies concerning their children's education in front of School Board of Trustees for decades.

Plaintiffs' third request in the Motion for Preliminary Injunction was the following "Issue an Order mandating that the if Defendants are acting in *Parens Patriae*, that said interference should be issued only under the requirements of substantive and procedural due process;" Notably, Plaintiffs also submitted the following "The mandate was issued via Executive Directive without public notice or hearing, a blatant denial of Plaintiffs, and others similarly situated with them of all due process rights. Such a blatant interference with fundamental rights of parental determination of medical care of their children, cannot be condoned by this Court.

Accordingly, this mandate must be immediately enjoined and parental participation must be allowed." *See ECF 8, pg 18 lns 15-20.*

### 1. A Strict Standard Should Be Applied as to Not Stifle Plaintiffs From Seeking Redress From Courts to Protect Their Children

This strict standard serves to uphold "Congress' policy of promoting vigorous prosecution of civil rights violations under . . . § 1983." *Miller v. L.A. Cnty. Bd. of Educ., 827 F.2d 617, 619 (9th Case 1:09-cv-00110-SOM-RLP Document 103 Filed 03/29/11 Page 3 of 6 PageID #: 4 Cir. 1987) (citations omitted).*

The Supreme Court has cautioned that in applying this standard, "it is important that the district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421-22 (1978) (Title VII case).*

Attorneys' fees in civil rights cases should only be awarded to a defendant in exceptional circumstances." *Barry v. Fowler, 902 F.2d 770, 773 (9th Cir. 1990); see also Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1036 (9th Cir. 2005); Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 202 (9th Cir. 1989).*

"A claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial." *Am. Fed'n of State, Cnty. and Mun. Employees, AFLCIO v. County of Nassau, 96 F.3d 644, 652 (2d Cir.1996).* Where a plaintiff, through his own testimony, presents evidence in support of his claims, fees may nevertheless be appropriate if that testimony was "an unmitigated tissue of lies" and/or the lawsuit was "motivated by malice and vindictiveness." *Id.*

It is significant to note, that in this matter, this Court did not hear any testimony by Plaintiffs. Plaintiffs' Declarations in Support of the Motion for Preliminary Injunctions included testimony of adverse effects their children have had as a result of wearing masks.  Furthermore, this Court had a litany of adverse effects of masks on children in Exhibit "3" of the Appendix to Plaintiffs' Motion for Preliminary Injunction.

Additionally, as Plaintiffs submitted to the Court on the day of the hearing of the Motions, the efficacy of cloth masks was also subject to questioning. Since the hearing on November 16, 2021, the CDC's Rachelle Walensky issued a statement that "If people want extra layers of protection, the KN95 or N95s do offer that," Walensky said in a December interview on PBS NewsHour. "But what I also want to really emphasize is that you need to be able to keep them on for when you're in those settings. Those KN95 and N95s are often not as comfortable."[7] The agency currently recommends wearing masks that are snugly fit, have at least two layers of breathable fabric and a wire bridge around the nose. The guidance also says N95 masks should be prioritized for health care workers. Some argue that harkens back to the days when workers scrambled to find the product — and that there's no longer a severe shortage of N95s.[8]

This was also confirmed by the former head of the Food and Drug Administration "Cloth masks aren't going to provide a lot of protection, that's the bottom line," Dr. Scott Gottlieb reiterated on January 2, 2022 that "This is an airborne illness. We now understand that, and a cloth mask is not going to protect you from a virus that spreads through airborne transmission."[9].

Despite Plaintiffs' request that the efficacy of masks be questioned, as 42 States in the Country did not mandate them, this Court denied said request. This Court also found that parents

---

[7] CDC may start recommending N95 masks - The Washington Post 1/11/22
[8]  https://www.theatlantic.com/science/archive/2021/12/mask-guidelines-cdc-walensky/621035/
[9] 'This is an airborne illness': Dr. Scott Gottlieb says cloth masks don't provide a lot of protection against COVID-19 | Washington Examiner

did not have any procedural due process rights to participate in the District's decision making process prior to the issuance of the mandate or even after same.

In fact, as the Clark County School Board of Trustees regularly holds hearings regarding student policies, the Nevada Open Meeting Law (OML) was enacted to ensure that the actions and deliberations of public bodies be conducted openly[10]. The OML governs meetings of public bodies. A public body is any administrative, advisory, executive, or legislative body of the state or local government which expends or disburses or is supported in whole or in part by tax revenue, or which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue, including any board, commission, committee, subcommittee, or other subsidiary.[11]

This Court declined the proposition that parents have any procedural due process rights as Plaintiffs requested in ECF 8, pg. 18, because there was simply no precedent from any states allowing for a successful mask mandate challenge. As stated *supra*, Nevada **now remains** 1 of 7 states mandating masks in schools, and the decision to do so, was taken without any public hearing affording parents' engagement in accordance with Open Meeting Laws with the Clark County School District Board of Trustees regarding the efficacy of same.

That does not make Plaintiffs' lawsuit frivolous or without foundation. This Court rested its decision on lack of precedent on a matter that prior to March, 2020, did not exist. Second, this Court did not address Plaintiffs' requests to terminate the Emergency Directive as to the school district, despite Plaintiffs' position that these Emergency Executive Powers should be terminated after 22 months because no precedent exists for same.

---

[10] NRS 241.010   *Legislative declaration and intent.*   In enacting this chapter, the Legislature finds and declares that all public bodies exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.
[11] Open Meeting Law Portal (nv.gov)[11]

### 2.      Defendants Allude to Bad Faith by Attaching Social Media Postings and Timeliness of Service of Complaint

It is also significant to note that Defendants' attachments of Counsels' social media accounts alludes that the matter was brought in bad faith because media coverage of the lawsuits was shared/posted by Counsels. This is further compounded by the allegation that the Complaint was not served for 30 days after filing the Complaint.

It is significant to note that lawsuits regarding mask mandates were filed across the Nation for months before Plaintiffs filed theirs. Florida Governor Ron DeSantis banned all Florida schools from requiring Covid-19 mask wearing, or face the loss of state funds. Issuing an executive order on July 30, DeSantis said that school district-imposed mask mandates violated the constitutional freedoms of Florida residents and parents' rights under Florida's constitution to make health-care decisions for their children. Several other states, including Texas, have also banned school-district imposed mask mandates. Two lawsuits had been filed against DeSantis by end of August, 2020.[12]

The constitutionality of mask mandates and laws that mandate them or mandate against them is clearly a matter that is of national and local public interest. The Associated Press has written endless articles about masks efficacy, CDC opinions on same, challenges to mandates etc. The fact that a lawsuit challenging mask mandates is shared on social media does nothing more than to inform the public that a lawsuit has been filed to address the issue that has been subject to protests after protests, long before the matter was filed.

Likewise, Plaintiffs served Defendants with a Complaint and a Motion for Preliminary Injunction on September 20, 2021. Taking into consideration that Defendants purportedly billed over 111 hours ***by four attorneys*** to draft Oppositions to Motions and Motions to Dismiss, *see*

---

[12] The constitutional issues related to Covid-19 mask mandates - National Constitution Center

*infra*, it would seem logical that it would take ***one attorney*** approximately 3 weeks to complete a Motion for Preliminary Injunction and have same filed for Service of process within 30 days of filing the Complaint.

Notwithstanding same, ECF No. 1 allowed for Service of process in accordance with FRCP 4 by November 10, 2021, and Plaintiffs served all documents by the requisite time.

**B.   DEFENDANTS SEEK COMPENSATION FOR DUPLICATIVE WORK AND WORK NOT ASSOCIATED WITH THIS MATTER.**

A district court has discretion to award "a reasonable attorney's fee" to the "prevailing party" in a § 1983 action. *42 U.S.C. § 1988(b).* In determining a reasonable attorney's fee, the district court's first step is to calculate a "lodestar" by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).* The district court should exclude hours that were not "'reasonably expended.' " *Id. at 434, 103 S.Ct. at 1939 (quoting S.Rep. No. 94-1011, p. 6 (1976) U.S.Code Cong. & Admin.News 1976 at pp. 5908, 5913).*

In determining what constitutes a reasonable fee, the district court should take into account the factors set forth in *Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976),* that it finds to be relevant. *D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383, 1386 (9th Cir.1990).*

The second step in the fee calculation is to assess whether the presumptively reasonable lodestar figure should be adjusted on the basis of *Kerr* factors not already subsumed in the initial calculation. *Id. at 1383.*

Although § 1988(b) endows the district court with discretion to determine what constitutes a reasonable attorney's fee, the Supreme Court has directed that "it remains

important. for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley, 461 U.S. at 437, 103 S.Ct. at 1941.*

In *Hensley,* the court found that Attorneys must exercise reasonable billing judgment, and public interest attorneys must exercise the reasonable billing judgment used in the private sector. *Hensley, 461 U.S. at 434.* Outrageous lack of billing judgment may result in no fees. *Lewis v. Kendrick, 940 F.2d 25 (1st Cir. 1991). See also, Fair Housing Council v. Landow, 999 F.2d 92 (4th Cir. 1993).* Must keep contemporaneous time records - reconstruction will result in substantial reduction or disallowance of fee. *Grendel's Den, Inc. v. Larkin, 742 F.2d. 945, 952 (1st Cir. 1984). Williams v. Town of Randolph 574 F.Supp.2d 250 (D.Mass. 2008)*

While time spent by several attorneys is compensable, hours billed by each attorney ***must not be duplicative of work performed by another attorney or work previously billed.*** *Lipsett v Blanco, 975 F.2d 934 (1st Cir. 1992).*

Work of paralegals, law students and law graduates is compensable at market rates. *Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463 (1989); Lipsett v Blanco, 975 F.2d at 939.* Prevailing market rates are rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum, 465 U.S. at 895 n. 11.* b. Relevant community is district where action was brought, whether attorney is local or not. *In re Agent Orange Product Liability Litigation, 818 F.2d 226, 232 (2d Cir. 1989)*

Here, Defendants claim that the market rate for a paralegal is $295.00 in Clark County and offer a reduction of $300.00. Defendants have provided no evidence of what the market rate for any of the attorneys who seek compensation for this action is. There are no supporting affidavits, past awards, etc. to justify same.

**1.     Counsel For Defendants Billed $9,727 Before They were Even Served with the Complaint and Motion for Preliminary Injunction.**

Defendants were served with the Complaint and Motion for Preliminary Injunction on September 20, 2021. Even assuming that they surrendered same to their attorneys on the same day, their attorneys had already billed 41.6 hours by five different lawyers before even receiving the Complaint or Motion, not including any review by the Office of General Counsel.

Again, this is significant to note that these billable hours were accumulated, not only before service of the pleadings, but before any action by the Office of General Counsel issuing a conflict or declination of representation.

**2.     Counsels' Fee Request Are Unreasonable as they Reveal Inaccuracies, Are Excessive and Duplicative of Effort.**

Defendants' requests for attorneys' fees are unreasonable because their time records reveal inaccuracies, are excessive due to overstaffing, demonstrate duplication of effort, and the inclusion of hours billed to other cases.

Furthermore, redacted portions of work performed should be stricken from billing since Plaintiffs cannot object to something that is redacted. For example, On 8/19/21 TDC billed 3.80 hours on a purportedly drafting a redacted document. *See ECF42-4, page 2/19.* Likewise on 9/9/21 CLN redacted the subject of research and billed 0.50 hours.

It is significant to note that there were three main pleadings filed in this case by Defendants, to wit: 1) Motion to Dismiss 2) Opposition to Motion for Preliminary Injunction; and 3)Reply to Motion to Dismiss

On the **Motion to Dismiss** the following hours were logged by four different attorneys

| | | | |
|---|---|---|---|
| KBH | 8/18/21 | 0.40 | Call with Newby on Motion to Dismiss |
| WW | 9/9/21 | 3.80 | Outline of arguments on Motion to Dismiss |

| | | | |
|---|---|---|---|
| KBH | 9/9/21 | 0.40 | Motion to Dismiss strategy with WW |
| WW | 9/14/21 | 4.8 | Continue research & outline for Motion to Dismiss |
| KBH | 9/15/21 | 0.10 | Follow up with WW on Motion to Dismiss |
| WW | 9/15/21-<br>9/17/21 | 18.2 | Drafting of Motion to Dismiss |
| MEF | 9/20/21 | 0.40 | Meeting with KBH on Motion to Dismiss |
| WW | 9/20/21 | 6.40 | Continue drafting Motion to Dismiss |

It is significant to note that all 34.5 hours above were billed before Defendants were even served with the Complaint in this matter.

| | | | |
|---|---|---|---|
| KBH | 9/21/21 | 1.90 | Review Motion to Dismiss |
| WW | 9/22/21 | 6.80 | Continue drafting Motion to Dismiss |
| WW | 9/23/21 | 6.10 | Continue drafting Motion to Dismiss |
| MEF | 9/27/21 | 1.20 | Review Complaint and Motion |
| KBH | 9/27/21 | 1.30 | Discuss Motion to Dismiss, review and revise same |
| CLN | 9/27/21 | 0.90 | Review and editing of Motion to Dismiss |
| WW | 9/27/21 | 8.70 | Edit/revise Motion to Dismiss |
| TDC | 9/28/21 | 0.60 | Review/revise Motion to Dismiss |
| MEF | 9/28/21 | 0.80 | Review Motion and Follow Up |
| KBH | 9/28/21 | 1.30 | Continue revisions to Motion to Dismiss |
| KBH | 9/28/21 | 0.30 | Review state Defendants Motion to Dismiss |
| WW | 9/29/21 | 1.00 | Edit/revise Motion to Dismiss |
| CLN | 9/30/21 | 0.80 | Editing of Motion to Dismiss |
| CLN | 10./1/21 | 1.80 | Editing of Motion to Dismiss |

| CLN | 10/4/21 | 3.40 | Editing of Motion to Dismiss |
| CLN | 10/4/21 | 0.3 | Communications with WW re: Motion to Dismiss |
| KBH | 10/7/21 | 0.50 | Discuss revisions to Motion to Dismiss |
| WW | 10/7/21 | 3.80 | Edit/revise Motions to Dismiss |
| KBH | 10/8/21 | 1.20 | Finalize filings |
| CLN | 10/8/21 | 4.6 | Review and editing of Motion to Dismiss and Response to Preliminary Injunction |

In total, four attorneys and one paralegal, duplicated revisions, edits, and drafting the 21 page Motion to Dismiss for a total of 76.9 hours after the Complaint was served. In total, four attorneys and one paralegal spent 111.4 hours were expended on the 21page Motion to Dismiss. It is clear that one attorney could have spent a full work week and completed the Motion to Dismiss in half the time. There is absolutely no justification for four lawyers and one paralegal to have participated in drafting this 21page Motion and billing 111.4 hours of work for the pleading.

On the Opposition for the Motion for Preliminary Injunction, which duplicates most of the same arguments and case law made for the Motion to Dismiss, the following hours were logged.

| KBH | 9/21/21 | 1.90 | Preparation of Response to MPI[13] |
| KBH | 9/22/21 | 1.90 | Continue to work on Response MPI |
| KBH | 9/23/21 | 2.00 | Continue preparation of Opposition to MPI |
| MEF | 9/24/21 | 0.30 | Conference with WW re: Opposition |
| ZAJ | 9/27/21 | 1.50 | Review TRO and summarize case law |

---

[13] Motion for Preliminary Injunction

KBH   9/28/21     0.30     Work with WW on strategy for Opposition of MPI

ZAJ   9/28/21     4.40     Review and summarize case law on TRO's

WW    9/2/21      7.40     Begin drafting Opposition to MPI

MEF   9/29/21     0.70     Review version of Opposition to MPI

KBH   9/29/21     2.40     Continue preparation of Opposition to MPI

WW    10/4/21     6.80     Continue drafting Opposition to MPI

KBH   10/5/21     1.70     Edit/Revise Opposition to MPI

WW    10/7/21     3.80     Edit revise MTD and Opposition to MPI

Taking into consideration that inner communications by Counsels were not mentioned above as much is redacted from the billing sheets; Counsels still had four attorneys work on the Opposition for Motion for Preliminary Injunction, for an amount of at least 35.1 hours. It is significant to note that at least 70% of the case law used in the Response to Preliminary Injunction is duplicative of that contained in the Motion to Dismiss.

The final notable brief in this matter was the Reply Brief submitted by Defendants.

KBH   10/14/21    0.10     Corr. w/ Newby re: Reply Brief

WW    10/21/21    6.40     Begin drafting Reply

KBH   10/22/21    0.50     Discuss and outline Reply with WW

WW    10/22/21    5.20     Continue drafting Reply

WW    10/25/21    9.60     Continue drafting reply

KBH   10/26/21    1.40     Review and Revise Reply

KBH   10/27/21    1.50     Review draft of State Defendants Reply

Again, Defendants' 12 page Reply Brief, was billed by three attorneys and this objection is not inclusive of collateral redacted communications; for a total of 24.7 hours. This also clearly demonstrates duplicative work that could have been performed by one attorney in half the time.

**3.     Defendants Fail to Meet the Requirements for Attorneys' Fees**

A party seeking fees has burden of documenting number of hours spent and submitting evidence in support of claim. *Hensley 461 U.S. at 433.* This evidence may be presented with:

1. Attach typed copies of each attorney's contemporaneous time records, but inform opposing counsel that originals are available upon request. *Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).* Failure to keep contemporaneous records will result in a substantial reduction or possible disallowance of fees. *Id. at 952; Photosomphone 984 F.2d at 8.*

2. Describe in affidavit (for each attorney/staff) which hours have been eliminated in the exercise of reasonable billing judgment.

3. In complex case, divide case into phases (e.g., complaint, preliminary injunction, discovery) and state in affidavit how many hours were spent in each phase.

4. Time sheets should identify each entry by date, nature of the activity (including which issue or claim it related to, if appropriate), and amount of time spent. Failure to provide sufficient specificity may result in reduction of fee award. *See, Grendel's Den; Lipsett, 975 F.2d at 938; Photosomphone v. Allison Reed Group, Inc. 984 F.2d 4 (1st Cir. 1993)*

Most significant in the timesheets provided is the redaction of description of activities justifying fees. Plaintiffs cannot object to a redacted billing and therefore, all redacted billings should be stricken from the timesheets and attorneys fees granted for same.

Attorney redactions exists on the following pages of ECF  42-4 and should be stricken from the record.

| | | | | | |
|---|---|---|---|---|---|
| 9/19/21 | CLN | 9/20/21 | KBH | 9/21/21 | KBH |
| 9/22/21 | KBH | 9/23/21 | KBH | 9/23/21 | WW |
| 9/28/21 | KBH | 9/29/21 | KBH | 9/29/21 | ZAJ |
| 9/30/21 | KBH | 10/2/21 | ZAJ | 10/4/21 | KBH |
| 10/6/21 | KBH | 10/8/21 | KBH | 10/27/21 | KBH |
| 11/15/21 | KBH | 11/24/21 | KBH | 12/22/21 | KBH |

**(a)** **Defendants Fail to Submit an Affidavit From each Attorney/Paralegal Billing on the Matter**

The Burden of proof of prevailing market rate is on moving party. Each attorney's affidavit should list professional qualifications and level of experience and briefly describe his/her role in the case.

Here, only Kara Hendrick's submitted an Affidavit in support of the Motion for Attorneys Fees. Accordingly, all other attorney's billings should be stricken from the Motion, since they failed to comply with the Affidavit requirement.

1. Each attorney's affidavit should indicate the hourly rate charged for each year of work on the case.

a. Court generally will accept attorney's statement that s/he has already been awarded fees at the specified rate by this court or a reference to a decision in which another local attorney with comparable experience and expertise was awarded fees at the requested rate.

b. Public interest attorneys without an established rate may prove rate by including affidavit from a local private attorney listing rates for attorneys with comparable experience and establishing that these rates are acceptable in local legal community.

*Gates v Deukmejian,* 987 F.2d at 1392, 1400 (9th cir. 1992), *Gates v. Gomez,* 60 F.3d 525, 534-35 (9th Cir.1995); *see Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984).

Furthermore, Defendants fail to provide any such Affidavits from local attorneys attesting to the customary rate of a paralegal or any of the attorneys working on this matter. Therefore, their unsubstantiated requests for attorneys fees should be denied.

## C.   DEFENDANTS WERE NOT PREVAILING PARTIES IN RUIZ MATTER AND CANNOT RECOVER FEES FOR THE LITIGATION THEREON.

Defendants attempt to bill for legal work in conjunction with the Ruiz and Burns lawsuits. First and foremost, Burns is not represented by undersigned Counsel and has nothing to do with the *Noto* matter. Second, Defendants were not prevailing parties in the Ruiz matter as Plaintiffs' State claims were remanded to the Eighth Judicial District Courts. Therefore, any billable time Defendants seek on the Ruiz matter is inappropriate for this Court to adjudicate.

This is especially true since on January 11, 2022, Defendants filed a similarly defective Motion for Attorneys Fees in the Ruiz matter, attempting submit billables submitted herein in the Ruiz case. *See [ECF 22] 2:21-cv-02036 attached to Appendix as Exhibit "3".*

ECF 42-4 page 11/19 contains billing for the Ruiz case, by KBH on 10/25/21. On 11/17/21 and through 11/29/21 KBH and WW engage in a series of billable hours in the total amount of 13.3 hours on a case that is not under this Court's jurisdiction, nor were they a prevailing party on same. Therefore those hours should also be stricken from the record.

## D.   PLAINTIFFS SHOULD NOT BE SADDLED WITH PAYING ATTORNEYS FEES WHEN THEY ARE FACING THEIR OWN FINANCIAL PROBLEMS

A district court should consider the financial resources of the plaintiff in awarding attorney's fees and may not advance the deterrent goal of attorney's fees at the cost of

subjecting the plaintiff to financial ruin. *Miller v. L.A. *32 County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir.1987). *See Gibbs v. Clements Food Co., 949 F.2d 344, 345 (10th Cir. 1991)* (explaining that "the party seeking to reduce the amount of attorney's fees because of limited finances has the burden to plead and establish his or her financial status").

There are key distinctions between government attorneys and private lawyers. The government attorney's duty is not simply to achieve the maximum recovery; rather, "the Government wins its point when justice is done in its courts." *Brady v. Maryland, 373 U.S. 83, 88 n.2 (1963).* State attorneys are paid a fixed salary from public funds to ensure that their loyalty is to the people of the State, not to finance four attorneys and a paralegal which could have been performed by attorneys in the Office of General Counsel.

Delegation of government authority to profit-motivated attorneys has predictably resulted in exorbitant fee awards at the public's expense. Such agreements have transferred millions of dollars to private lawyers with little relation to the number of hours actually spent working on the government's behalf. *See Manhattan Inst., Center for Legal Pol'y, Trial Lawyers, Inc.: A Report on the Lawsuit Industry in America 2003 6 (2003)*

Here, Plaintiffs are parents of students attending public school at Clark County School District. Attached hereto is Plaintiffs' Declarations that it is clear that Defendants' financial resources abundantly outweigh theirs.

Furthermore, Defendants had access to the Office of General Counsel which should have been used to litigate this matter, and no attorneys' fees would have been incurred had they done that.

## **CONCLUSION**

Defendants' requests for Attorneys fees is not only unsubstantiated under the above-mentioned jurisprudence and compliance with precedents; but also a demonstration of

unjustifiable fiscal irresponsibility. Accordingly, Plaintiffs request that Defendants' Motion for Attorneys fees be denied in totality.

DATED this _19th_ day of January, 2022.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*_____
SIGAL CHATTAH, ESQ.
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
*Attorney for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 19th day of January, 2022, I personally served a true copy of the foregoing Plaintiffs' RESPONSE TO CCSD'S MOTION FOR ATTORNEYS FEES by the Courts electronic service system to all registered parties:

*/s/ Sigal Chattah*

_____
An Agent of Chattah Law Group

-24-